Slip Op. 20-42

### UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GODACO SEAFOOD JOINT STOCK COMPANY,**<br><br>    **Plaintiff,**<br><br>**and**<br><br>**CAN THO IMPORT-EXPORT JOINT STOCK COMPANY ET AL.,**<br><br>    **Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>    **Defendant,**<br><br>**and**<br><br>**CATFISH FARMERS OF AMERICA ET AL.,**<br><br>    **Defendant-Intervenors.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Consol. Court No. 18-00063** |

### OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's Final Results of the thirteenth administrative review of the antidumping duty order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam.]

Dated: April 1, 2020

Andrew B. Schroth, Jordan C. Kahn, and Ned H. Marshak, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of Washington, D.C., argued for Plaintiff GODACO Seafood Joint Stock Company.  With them on the briefs was Dhramendra N. Choudhary.  Andrew T. Schutz and Michael S. Holton also appeared.

Kenneth N. Hammer, Trade Pacific, PLLC, of Washington, D.C., argued for Consolidated Plaintiff Can Tho Import-Export Joint Stock Company.  With him on the briefs were Robert G. Gosselink and Jonathan M. Freed.

Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of Washington, D.C., argued for Consolidated Plaintiff Golden Quality Seafood Corporation.  With him on the briefs was Andrew B. Schroth.  Andrew T. Shutz, Dhramendra N. Choudhary, Michael S. Holton, and Ned H. Marshak also appeared.

Kenneth N. Hammer, Robert G. Gosselink and Jonathan M. Freed, Trade Pacific, PLLC, of Washington, D.C., argued for Consolidated Plaintiffs Vinh Quang Fisheries Corporation, NTSF Seafoods Joint Stock Company, Green Farms Seafood Joint Stock Company, and Hung Vuong Corporation.

John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, D.C., argued for Consolidated Plaintiff Southern Fishery Industries Company, Ltd.  With him on the briefs were Alexandra H. Salzman, Judith L. Holdsworth, and J. Kevin Horgan.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States.  With her on the briefs were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Kara M. Westercamp, Trial Attorney.  Of counsel was Ian A. McInerney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.  Kristen E. McCannon also appeared on the briefs.

Jonathan M. Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for Defendant-Intervenors Simmons Farm Raised Catfish, Inc., Magnolia Processing, Inc. (doing business as Pride of the Pond), Heartland Catfish Company, Guidry's Catfish, Inc., Delta Pride Catfish, Inc., Consolidated Catfish Companies LLC (doing business as Country Select Catfish), Catfish Farmers of America, America's Catch, and Alabama Catfish Inc. (doing business as Harvest Select Catfish, Inc.).  With him on the briefs was James R. Cannon, Jr.  Heather K. Pinnock, Jeffrey B. Denning, Nina R. Tandon, and Robert C. Cassidy, Jr. also appeared.

Choe-Groves, Judge:  This action arises from the thirteenth administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam") by the U.S. Department of Commerce ("Commerce").  Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 83 Fed. Reg. 12,717 (Dep't. Commerce Mar. 23, 2018) (final results, final results of no shipments, and partial rescission of the antidumping duty administrative review)

("<u>Final Results</u>"); <u>see</u> Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues

and Decision Mem. for the Final Results of the Thirteenth Antidumping Duty Administrative

Review, P.R. 337 (Mar. 14, 2018) ("IDM").  Before the court are six motions for judgment on

the agency record filed by Plaintiff GODACO Seafood Joint Stock Co. ("GODACO"),

Consolidated Plaintiff Golden Quality Seafood Corp. ("Golden Quality"), Consolidated Plaintiffs

Vinh Quang Fisheries Corporation ("Vinh Quang"), NTSF Seafoods Joint Stock Co. ("NTSF

Seafoods"), Green Farms Seafood Joint Stock Co. ("Green Farms"), Hung Vuong Corp. ("Hung

Vuong"), Can Tho Import-Export Joint Stock Co. ("CASEAMEX"), and Southern Fishery

Industries Co., Ltd. ("South Vina").  For the reasons that follow, the court sustains in part and

remands in part the <u>Final Results</u> to Commerce for further consideration.

## ISSUES PRESENTED

This case presents the following issues:

1.      Whether Commerce's application of adverse facts available to GODACO is

supported by substantial evidence;

2.      Whether Commerce acted in accordance with 19 U.S.C. § 1677m;

3.      Whether Commerce's refusal to verify GODACO's submissions is in accordance

with the law;

4.      Whether Commerce's rejection of GODACO's rebuttal comments and case brief

on the basis of untimely filed new factual information is supported by substantial evidence;

5.      Whether Commerce's rejection of Golden Quality's review request withdrawal is

in accordance with the law;

6.      Whether South Vina exhausted administrative remedies; and

      7.     Whether the rate applied to the separate rate respondents is supported by substantial evidence and in accordance with the law.

## BACKGROUND

Commerce initiated the thirteenth administrative review of the antidumping duty order on certain frozen fish fillets from Vietnam covering shipments for the period of August 1, 2015 through July 31, 2016.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 71,061, 71,063–64 (Dep't. Commerce Oct. 14, 2016).  Commerce selected GODACO and Golden Quality as mandatory respondents.  Commerce's Selection of Respondents for Individual Review Mem., P.R. 73 (Feb. 22, 2017).

Parties seeking to withdraw from the administrative review were required to request withdrawal within ninety days of publication of the notice of initiation, by January 12, 2017.  81 Fed. Reg. at 71,062.  On January 12, 2017, the petitioners in the administrative action below withdrew their review request for forty-eight companies, including Golden Quality.  Petitioner's Withdrawal Request, P.R. 69 (Jan. 12, 2017).  Golden Quality sought to withdraw its request for review on January 23, 2017.  Golden Quality Withdrawal Request, P.R. 71 (Jan. 23, 2017).  Commerce issued nonmarket economy ("NME") antidumping duty questionnaires to GODACO and Golden Quality on February 24, 2017.  Commerce's Antidumping Duty Questionnaire and Accompanying Appendices to GODACO, P.R. 79–82 (Feb. 23, 2017); Commerce's Antidumping Duty Questionnaire and Accompanying Appendices to Golden Quality, P.R. 75–78 (Feb. 23, 2017).  Golden Quality's Section A Questionnaire was due on March 17, 2017.  Letter from U.S. Dep't. of Commerce to Golden Quality Seafood Corp., P.R. 75–78 (Feb. 24, 2017).  In March, prior to the Section A Questionnaire due date, Golden Quality reiterated its intention not

to participate in the thirteenth administrative review.  Letter from Grunfeld, Desiderio, Lebowitz,

Silverman & Klestadt LLP to U.S. Dep't. of Commerce, P.R. 85 (Mar. 4, 2017).  GODACO's

Section A Questionnaire Response was due on March 17, 2017, and the Section C and D

responses were due on April 2, 2017.  Commerce's Antidumping Duty Questionnaire and

Accompanying Appendices to Golden Quality, P.R. 79–82 (Feb. 23, 2017).  Commerce granted

GODACO an extension to submit its Section A Questionnaire Response until March 24, 2017.

U.S. Dep't. of Commerce Mem. to File from P. Walker, P.R. 89 (Mar. 14, 2017).

     Commerce issued a supplemental questionnaire to GODACO on June 13, 2017.

Supplemental Questionnaire for GODACO, P.R. 176, C.R. 142 (June 13, 2017) ("GODACO's

Suppl. Questionnaire").  On June 20, 2017, GODACO asked Commerce to limit the scope of its

reporting requirements for certain questions in GODACO's Suppl. Questionnaire.  Letter from

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to U.S. Dep't. of Commerce, P.R.

184 (June 20, 2017).  Commerce issued revisions to its supplemental questionnaire.  Letter from

U.S. Dep't. of Commerce to GODACO Seafood Joint Stock Co., P.R. 193, C.R. 156 (July 5,

2017).  GODACO responded to the revised supplemental questionnaire.  GODACO Seafood

Joint Stock Company Supplemental Questionnaire Response, P.R. 197–98, C.R. 158–59, C.R.

160–186 (July 17, 2017) ("GODACO's SQR").

     The eventual Defendant-Intervenors in this action filed comments on GODACO's SQR.

Letter from Cassidy Levy Kent (USA) LLP to U.S. Dep't. of Commerce, P.R. 233–37, C.R.

189–93 (Aug. 1, 2017).  GODACO requested an extension to submit rebuttal comments, which

Commerce granted, and GODACO submitted timely rebuttal comments.  GODACO Seafood

Joint Stock Co. Rejected Rebuttal Comments, P.R. 265, C.R. 202–04 (Aug. 14, 2017)

("GODACO's Rejected Rebuttal"); U.S. Dep't. of Commerce Mem., P.R. 262 (Aug. 9, 2017).

Commerce rejected GODACO's rebuttal comments.  Letter from U.S. Dep't. of Commerce to

GODACO Seafood Joint Stock Co., P.R. 274 (Aug. 15, 2017) ("Commerce's Rejection of

GODACO's Rebuttal").  GODACO submitted revised rebuttal comments.  GODACO Seafood

Joint Stock Co. Revised Rebuttal Comments, P.R. 275, C.R. 225–27 (Aug. 16, 2017).

Commerce issued its Preliminary Results on September 12, 2017.  <u>Certain Frozen Fish</u>

<u>Fillets from the Socialist Republic of Vietnam: Preliminary Results, Preliminary Determination</u>

<u>of No Shipments, and Partial Rescission of the Antidumping Duty Administrative Review;</u>

<u>2015–2016</u>, 82 Fed. Reg. 42,785 (Sept. 12, 2017) ("PDM").  Commerce noted GODACO's

failure to respond to Commerce's request for CONNUM-specific factors of production.[1]  PDM

at 15–18.  In the Preliminary Results, Commerce assigned: (1) GODACO a rate of $2.39/kg as

facts available with an adverse inference, (2) Golden Quality the Vietnam-wide entity rate of

$2.39/kg because it did not demonstrate eligibility for a separate rate, and (3) GODACO's rate to

the separate rate respondents.  <u>Id.</u>  Commerce omitted South Vina from the Preliminary Results'

separate rate analysis and omitted South Vina in its list of separate rate companies.  <u>Id.</u>

Commerce rejected GODACO's administrative case brief as containing untimely filed

new factual information.  GODACO's Rejected Admin. Case Br., P.R. 317 (Feb. 5, 2018)

---

[1] "A CONNUM is a contraction of the term control number, and is simply Commerce jargon for a unique product (defined in terms of a hierarchy of specified physical characteristics determined in each antidumping proceeding)."  <u>Union Steel v. United States</u>, 36 CIT 288, 291 (2012) (internal quotation marks and citation omitted).  The CONNUMs at issue in this case are at the most abstract level a set of characteristics.  Each characteristic is described by a subset of single-digit integers, and all of these integer subsets are concatenated to form a long string of numbers describing the subject merchandise.  <u>See</u> IDM at 9.

("GODACO's Rejected Br."); Rejection of GODACO's Admin. Case Br., P.R. 327 (Feb. 14,

2018) ("Commerce's Rejection of GODACO's Br.").  GODACO refiled its brief with the

requested redactions.  GODACO Seafood Joint Stock Co. Refiled Case Br., P.R. 329, C.R. 244

(Feb. 15, 2018).  South Vina did not submit an administrative case brief.

Commerce published the Final Results on March 23, 2018.  Final Results at 12,717.  In

the Final Results, Commerce continued to find that it was appropriate to use adverse facts

available to calculate a rate for GODACO and applied a rate of $3.87/kg.  IDM at 12–14.

Commerce applied a rate of $3.87/kg to the separate rate respondents.  Id. at 17–18.  Commerce

found that Golden Quality had never requested that Commerce extend the withdrawal deadline

and assigned Golden Quality the Vietnam-wide entity rate of $2.39/kg.  Final Results at 12,718.

Plaintiff initiated this action on March 29, 2018 challenging certain aspects of

Commerce's Final Results.  Summons, Mar. 29, 2018, ECF No. 1; Compl. ¶ 1, Mar. 29, 2018,

ECF No. 6.  The court entered a statutory injunction on April 2, 2018.  Order for Statutory Inj.

Upon Consent, Apr. 16, 2018, ECF No. 10.  The Catfish Farmers of America and individual

catfish processors, America's Catch, Alabama Catfish Inc. (doing business as Harvest Select

Catfish, Inc.), Consolidated Catfish Companies LLC (doing business as Country Select Catfish),

Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Co., Magnolia Processing,

Inc. (doing business as Pride of the Pond), and Simmons Farm Raised Catfish, Inc. (collectively,

"Defendant-Intervenors"), intervened on April 20, 2018.  Order, Apr. 20, 2018, ECF No. 16.

The administrative record was filed on May 14, 2018.  Letter from Kristen McCannon, Office of

the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, to

Mario Toscano, Clerk of the Court, U.S. Court of International Trade, May 14, 2018, ECF No.

18.

     The court consolidated this case with Court Nos. 18-00064, 18-00065, 18-00069, and 18-

00071 on June 7, 2018.  Order, June 7, 2018, ECF No. 21.  Plaintiff and Consolidated Plaintiffs

filed motions for judgment on the agency record.  Pl.'s Mots. For J. on the Agency R., Sept. 19,

2018, ECF Nos. 31, 32; Consol. Pl. Golden Quality Seafood Corp.'s Mot. for J. on the Agency

R., Sept. 19, 2018, ECF No. 27 ("Golden Quality's Mot."); Consolidated Pls. Vinh Quang,

NTSF Seafoods, Green Farms, and Hung Vuong's R. 56.2 Mot. for J. on the Agency R., Sept.

19, 2018, ECF No. 28; Consol. Pl. CASEAMEX's R. 56.2 Mot. for J. on the Agency R., Sept.

19, 2018, ECF No. 30; Consol. Pl. Southern Fishery Indus. Co., Ltd.'s R. 56.2 Mot. for J. Upon

the Agency R., Sept. 19, 2018, ECF No. 33 ("South Vina's Mot.").

     The court stayed this case following the lapse in appropriations for the Department of

Justice on January 15, 2019.  Order, Jan. 15, 2019, ECF No. 38.  The court lifted the stay

following the restoration of appropriations on February 1, 2019.  Third Am. Scheduling Order,

Feb. 1, 2019, ECF No. 40.

     Defendant and Defendant-Intervenors responded.  Def.'s Resp. to Pls.' Mots. For J. Upon

the Agency R., Mar. 24, 2019, ECF No. 46 ("Def.'s Resp."); Def.-Inters.' Resp. in Opp. to Pl.'s

and Consol. Pls.' R. 56.2 Mots. For J. on the Agency R., Mar. 24, 2019, ECF No. 48 ("Def.-

Inters.' Resp. Br.").  Plaintiff and Consolidated Plaintiffs replied.  Pl.-Inter. Southern Fishery

Indus. Co., Ltd. Reply Br., June 21, 2019, ECF No. 52 ("South Vina's Reply Br."); Reply Br. of

Consol. Pls. Vinh Quang Fisheries Corp., Can Tho Import-Export Joint Stock Co., NTSF

Seafoods Joint Stock Co., Green Farms Joint Stock Co., and Hung Vuong Corp., June 21, 2019,

ECF No. 54; Reply Br. of Consol. Pl. Golden Quality Seafood Corp., June 21, 2019, ECF No. 55

("Golden Quality's Reply Br."); and Reply Br. of Pl. GODACO Seafood Joint Stock Co., June

21, 2019, ECF No. 57 ("GODACO's Reply Br.").  The joint appendix was filed on July 3, 2019.

Joint App'x to Opening, Resp., and Reply Brs. Regarding Pls.' Mot. for J. on the Agency R.

Pursuant to R. 56.2, July 3, 2019, ECF Nos. 58, 58-1, 58-2, 58-3.  The court heard oral argument.

Oral Argument Hr'g, Oct. 29, 2019, ECF No. 69.  Plaintiff filed a notice of supplemental

authority.  Notice of Suppl. Authority, Dec. 30, 2019, ECF No. 70.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(I) and (B)(iii).  The court will hold unlawful any determination, finding, or

conclusion found to be unsupported by substantial evidence on the record, or otherwise not in

accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

I.      **Commerce's Application of Adverse Facts Available to GODACO**

The first issue is whether Commerce's application of adverse facts available to

GODACO is supported by substantial evidence.

If "necessary information is not available on the record," or an interested party:

(1) "withholds information that has been requested," (2) "fails to provide such information by the

deadlines for submission of the information or in the form and manner requested,"

(3) "significantly impedes a proceeding," or (4) "provides such information but the information

cannot be verified," then Commerce may rely on facts otherwise available.  19 U.S.C.

§ 1677e(a)(1), (2)(A)–(D).  If a party fails to cooperate to the best of its ability, Commerce may

use an inference adverse to the interests of that party in selecting from among the facts otherwise

available.  19 U.S.C. § 1677e(b).  The U.S. Court of Appeals for the Federal Circuit has

interpreted 19 U.S.C. § 1677e subsections (a) and (b) to have different purposes.  See Mueller

Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014)

(discussing 19 U.S.C. § 1677e(a)–(b)).

Subsection (a) applies "whether or not any party has failed to cooperate fully with the

agency in its inquiry."  Id.  A respondent's "mere failure . . . to furnish requested information—

for *any reason*—requires Commerce to resort to other sources of information to complete the

factual record."  Id. (internal citations omitted).

Subsection (b) applies only when Commerce makes a separate, additional determination

that the respondent failed to cooperate by not acting to the best of its ability.  19 U.S.C.

§ 1677e(b); see Canadian Solar Int'l Ltd. v. United States, 43 CIT __, __, 378 F. Supp. 3d 1292,

1320 (2019) (noting that "Commerce must invoke subsection (a) to reach subsection (b)").  A

party fails to cooperate to the best of its ability when it does not "conduct prompt, careful, and

comprehensive investigations of all relevant records that refer or relate to the imports in question

to the full extent of [its] ability to do so."  Nippon Steel Corp. v. United States, 337 F.3d 1373,

1382 (Fed. Cir. 2003) (noting that "intentional conduct, such as deliberate concealment or

inaccurate reporting . . . evinces a failure to cooperate"); see also Essar Steel Ltd. v. United

States, 678 F.3d 1268, 1276 (Fed. Cir. 2012).  Commerce may consider an adverse inference

when a respondent fails "to cooperate to the best of [the] respondent's ability, regardless of

motivation or intent."  Nippon Steel Corp., 337 F.3d at 1383.  This standard "does not require

perfection and recognizes that mistakes sometimes occur, but it does not condone

inattentiveness, carelessness, or inadequate record keeping." Papierfabrik August Koehler SE v.

United States, 843 F.3d 1373, 1378 (Fed. Cir. 2016) (quoting Nippon Steel Corp., 337 F.3d at

1382) (internal quotation marks omitted).  When making an adverse inference, Commerce may

rely on information derived from the petition, a final determination in the investigation, a

previous administrative review, or any other information placed on the record.  See 19 U.S.C.

§ 1677e(b)(2); 19 C.F.R. § 351.308(c).

    A. Application of Facts Available

    GODACO argues that the record does not support the application of facts available.

GODACO contends that: (1) its responses provided all necessary information on the record,

(2) the record is complete, (3) it did not withhold information, (4) it complied fully with all

requests for information in a transparent and timely fashion, (5) all information provided was in

the form and manner requested, and (6) it did not impede the administrative proceeding.  Pl.'s

Mot. For J. on the Agency R., Sept. 19, 2018, ECF No. 32 at 34–35 ("GODACO's Br.").

GODACO also argues that Commerce failed to support properly its argument that the record is

missing "complete farming [factors of production]."  Id. at 14–15; GODACO's Reply Br. at 9–

10; IDM at 12.

    Commerce relied upon 19 U.S.C. §§ 1677e(a)(1) and (2)(A)–(C) in determining that the

use of facts otherwise available was warranted.  IDM at 12.  Defendant argues that substantial

evidence supports Commerce's application of facts available.  Defendant contends that

GODACO failed to provide either a reliable U.S. sales database or a reliable factors of

production database, and that the record did not contain necessary information.  Def.'s Resp. at

20; IDM at 11, 14.  Defendant-Intervenors concur, claiming that GODACO: (1) failed to

substantiate whether its factors of production methodology resulted in CONNUM-specific data,

(2) failed to report NETWGTU correctly, (3) reported inaccurate factors of production because it

misreported non-subject merchandise, and (4) failed to report correctly farming factors of

production.  Def.-Inters.' Resp. Br. at 8, 9, 12, 13.

1. *GODACO's factors of production submission did not reconcile with all of the CONNUMs at issue*

The court first examines whether Commerce relied correctly on facts otherwise available

as to GODACO's factors of production.

GODACO was required to provide Commerce with factors of production information

that reconciled to all of the CONNUMs at issue.  Mueller, 753 F.3d at 1232 (holding that

regardless of the reason, a respondent's failure to provide requested information requires

Commerce to resort to other sources of information); IDM at 12 (noting that GODACO was to

report factors of production information on a CONNUM-specific basis); GODACO's SQR at 16

(requesting information reconciling factors of production information to a particular CONNUM

in response to Supplemental Question 40).[2]  Commerce identified, however, a "pattern of

missing formulas and numbers that [did] not reconcile to the reported allocation methodology" in

---

[2] GODACO's argument that Supplemental Question 37 did not direct GODACO to reconcile the one day of production run data to its larger factors of production reporting and all ratios for all CONNUMs is inapposite.  GODACO's Reply Br. at 12.  GODACO's response to Supplemental Question 40 states sample reconciliations to a particular CONNUM were provided in response to Supplemental Questions 37 and 38.  GODACO's SQR at 16.  Additionally, GODACO's response to Supplemental Question 39 adds that the information responding to Supplemental Questions 37 and 38 "contain the detail of how GODACO reported CONNUM-specific [factors of production] to [Commerce]."  Id.  In light of GODACO's responses to Supplemental Questions 37–40, GODACO's argument that Supplemental Question 37 did not specifically direct GODACO to reconcile its production run data to its factors of production reporting and all ratios for all CONNUMs is unpersuasive.

GODACO's submitted material.  IDM at 11; U.S. Dep't of Commerce Mem. at 3, P.R. 292, C.R.

235 (Aug. 31, 2017) (describing a significant discrepancy between the reported ratio of

preservative used to manufacture the subject product and the reported overall quantity of

preservative used) ("BPI Memo").

Commerce found, and GODACO concedes, that the factors of production information

submitted by GODACO does not reconcile with all of the CONNUMs at issue.  IDM at 8 n.26;

BPI Memo at 3; GODACO's Reply Br. at 11 (conceding that GODACO's response was "never

intended to exhaustively reconcile each final [factors of production] ratio for every CONNUM

reported").  Because this administrative review required CONNUM-specific reporting, and the

reconciliation between factors of production and all of the CONNUMs at issue was critical to

achieve CONNUM-specific reporting, the court finds that Commerce determined correctly that

the record did not contain necessary information.  IDM at 7–8.

The court concludes that GODACO did not provide requested information, and

Commerce's reliance on facts otherwise available as to GODACO's factors of production

database is supported by substantial evidence.

> 2. *Commerce relied correctly on facts otherwise available as to GODACO's net
>    weight reporting*

The court next examines whether Commerce relied correctly on facts otherwise available

as to the net weight information GODACO reported in two specific fields in the U.S. sales

database.

Commerce directed GODACO twice to report the subject merchandise's net weight in the

U.S. sales database: first in a field named NETWGTU, and second in a field named

NETWGT2U.[3]   GODACO Section C Questionnaire Response: Sales to the United States at 11,

P.R. 124–125, C.R. 91–93 (Apr. 13, 2017) ("GODACO's Section C Resp."); GODACO's Suppl.

Questionnaire at 6.

GODACO claims that it excluded added moisture from NETWGTU because

Commerce's NETWGTU reporting definition requested "the percentage of weight as sold . . . ."

GODACO's Section C Resp. at 11.   GODACO argues that because: (1) it sells its fillets on a

"net weight" basis, meaning the price of its fillets excludes added moisture, and (2) the

NETWGTU definition requests specifically weight reporting on an "as sold" basis, GODACO's

---

[3] Commerce's Section C Questionnaire instructed GODACO to report the following for the Net Weight Factor ("NETWGTU") field:

> the percentage of weight as sold accounted for by any added ice, water, glazing, soaking *etc*. . . . [I]f the product is soaked with a weight gain additive and additional water weight accounts for 15 percent of the weight of the merchandise as sold, report the numeric characters "15" in this field.   If weight as sold does not include ice, water, glazing, etc., report "00" in this field.

GODACO's Section C Resp. at 11.

In response, GODACO provided data in a field named NETWGTU.   Id. at 12, Ex. C-1. Commerce, concerned that GODACO's NETWGTU reporting did not tell the whole story, instructed GODACO to:

> revise the U.S. sales database to include a NETWGT2U field and report in this field the amount of water added to the fillets by soaking, tumbling, injection, etc. either (1) directly without the use of chemical additives, or (2) through the use of chemical additives (*e.g.*, STTP).   For example, for a fillet that incorporates 5% added water, report the numeric characters "05" in this field.

GODACO's Suppl. Questionnaire at 6.

In response, GODACO provided data in a new field named NETWGT2U.   GODACO's SQR at 7, Ex. S-9.   GODACO did not remove the field named NETWGTU.   GODACO's Br. at 24–25.   GODACO also did not revise its U.S. sales database or update its CONNUMs.

NETWGTU reporting is correct.  GODACO's Br. at 5–6.  Additionally, GODACO's argument

that Commerce confirmed GODACO's understanding of NETWGTU in a memorandum is

unpersuasive because the memorandum pointed out an internal inconsistency within GODACO's

submission.  BPI Memo at 2; Def.'s Resp. at 35.  Because (1) GODACO's sales contracts do not

define the term "net weight" and (2) Commerce did not "confirm" anything about GODACO's

incorrect understanding of NETWGTU, Commerce's conclusions regarding GODACO's

NETWGTU reporting methodology are supported by substantial evidence.  See, e.g., GODACO

Seafood Joint Stock Co. Section A Questionnaire Response at Ex. A-10, P.R. 102–103, C.R. 55–

56 (Mar. 29, 2017) (describing the subject merchandise's sales terms, but failing to define "net

weight"); IDM at 9–10.

Commerce's conclusions as to GODACO's NETWGT2U reporting methodology are also

supported by substantial evidence.  GODACO claims that Commerce asked GODACO to add a

new field called NETWGT2U to the U.S. sales database, not replace the existing NETWGTU

field with the NETWGT2U field.  GODACO's Br. at 10, 24, 27.  Because GODACO's

Supplemental Questionnaire directed GODACO specifically to revise the U.S. sales database to

"include a NETWGT2U field" instead of "add a NETWGT2U field," GODACO should have

replaced the NETWGTU field with the NETWGT2U field.  GODACO's Suppl. Questionnaire at

6.  GODACO's argument is not persuasive because Commerce differentiates between "add" and

"include."  For example, the immediately preceding page of GODACO's SQR reproduces

Commerce's directive to "add a field to the Section C database" to describe a different

characteristic of the subject merchandise.  GODACO's SQR at 6.

Significantly, the issue of NETWGTU and NETWGT2U information should be viewed in the context of Commerce's repeated directions to GODACO to update its CONNUMs. NETWGTU is one component of the CONNUMs at issue, and GODACO refused to update its CONNUMs when it provided the NETWGT2U information.  See GODACO's Br. at 24–25. Changing one field of information affects the total CONNUMs calculation, and it was reasonable for Commerce to request that GODACO update its CONNUMs when one component changed. Similarly, it was reasonable for Commerce to conclude that GODACO could not merely add a NETWGT2U field to the U.S. sales database and fail to update its CONNUMs.  IDM at 9–10.

Because GODACO did not report correctly the net weight information that Commerce had requested, the court concludes that Commerce's reliance on facts otherwise available as to GODACO's NETWGTU and NETWGT2U reporting is supported by substantial evidence.

> 3.   *Failure to report accurate factors of production because it misreported non-subject merchandise*

Next, the court examines whether Commerce's use of GODACO's misreporting of non-subject merchandise and resultant failure to report accurate factors of production as a basis for the application of facts otherwise available is supported by substantial evidence.

Commerce required GODACO to report correctly its factors of production information. Mueller, 753 F.3d at 1232 (holding that regardless of the reason, a respondent's failure to provide requested information requires Commerce to resort to other sources of information). Substantial evidence supports Commerce's determination that GODACO included information improperly for non-subject merchandise in its reported factors of production.  Def.'s Resp. at 36–37; see Def.-Inters.' Resp. Br. at 12–13.  GODACO concedes that "[i]f product sold to another

country [fell] within the same CONNUM as subject merchandise, GODACO was *required* to

report the [factors of production] of that product as merchandise under consideration."

GODACO's Br. at 29.  GODACO acknowledges that two CONNUMs contained "a small

amount of merchandise exported to third country markets . . . [with] higher amounts of water

added by soaking than the subject merchandise."  GODACO's Reply Br. at 8–9.  Because the

record shows that GODACO misreported non-subject merchandise, the court concludes that

Commerce's reliance on facts otherwise available on GODACO's misreporting of non-subject

merchandise and resultant failure to report accurate factors of production is supported by

substantial evidence.

> 4.   *Commerce applied incorrectly facts otherwise available regarding*
>      *GODACO's "complete farming [factors of production]"*

The court examines whether Commerce's conclusion that information concerning

GODACO's "complete farming [factors of production]" was both necessary and missing from

the record is supported by substantial evidence.  GODACO's Br. at 14–15; GODACO's Reply

Br. at 9–10; IDM at 12.

When Commerce's discussion "lacks record citations supporting the agency's

findings . . . the court cannot reasonably discern . . . which particular information Commerce

determined was missing."  Hyundai Heavy Indus. Co. v. United States, 42 CIT __, __, 332 F.

Supp. 3d 1331, 1349 (2018).  Defendant's general citation to an extensive attachment, without

citing specific record evidence, does not suffice as support for its position.  Id.

Here, Commerce stated only that GODACO failed to provide "necessary . . . complete

farming [factors of production]" information in the form and manner Commerce had requested.

IDM at 12.  The associated footnote directs the reader simply to "[*s*]*ee* Original Questionnaire and Supplemental Questionnaire."  Compare id. at 12 n.48 with Hyundai Heavy Indus. Co., 332 F. Supp. 3d at 1349.  Commerce did not explain its finding of what specific information was necessary and missing from the record, and provided no additional record citations in support of its findings.  IDM at 12.

Commerce's footnote citation directing the reader to "[*s*]*ee* Original Questionnaire and Supplemental Questionnaire" does not satisfy Commerce's burden to provide enough information to allow the court to discern reasonably which particular evidence Commerce determined was missing.  Defendant-Intervenors attempt to provide some analysis in their brief, but this ex post facto speculation is not a permissible explanation that assists the court with understanding how Commerce arrived at its conclusion.  See Def.-Inters.' Resp. Br. at 13–15. Absent an adequate explanation of its reasoning, Commerce cannot use the purported absence of necessary information concerning GODACO's "complete farming [factors of production]" as a basis for the application of facts otherwise available.  See 19 U.S.C. § 1677e(a); Mueller, 753 F.3d at 1232.

The court concludes that Commerce's application of facts otherwise available as to GODACO's "complete farming [factors of production]" is not supported by substantial evidence because Commerce did not support its analysis with proper explanations and citations to material in the administrative record.

B.   Commerce Did Not Apply an Adverse Inference Correctly

Commerce's application of an adverse inference to GODACO is improper because Commerce did not set forth its rationale for applying an adverse inference to GODACO.  See

IDM at 12–13.  The relevant section of the IDM merely states the legal standard for the application of an adverse inference.  Id.  The IDM is silent as to the reasoning why it was appropriate to apply an adverse inference to GODACO.  Id.  The statement of a legal standard for the application of an adverse inference is distinct from the application of that legal standard to the facts in the matter before Commerce.  See Am. Silicon Techs. v. United States, 24 CIT 612, 625 (2000) (remanding to Commerce a determination to apply an adverse inference where Commerce's reasoning stated merely the standard for the application of facts available).

Defendant's references in its brief to Commerce's factual findings do not suffice here. The court notes that Commerce failed to set forth any analysis in the Final IDM as to how the factual findings were considered with respect to the requirements imposed by 19 U.S.C. § 1677e(b).  Although Defendant has addressed some of the relevant issues in its briefing, the court concludes that Commerce's application of an adverse inference is not supported by substantial evidence because Commerce failed to provide any analysis in its Final IDM.  Because this matter must be remanded in any case, the court will not attempt to discern Commerce's reasoning regarding an adverse inference from the record.  The court finds it more efficient for Commerce to state clearly its findings as it will have an opportunity to do so on remand.  The court remands this issue to Commerce for further consideration consistent with this opinion.

## II.    Commerce Acted in Accordance With 19 U.S.C. § 1677m

The second issue is whether Commerce acted in accordance with 19 U.S.C. § 1677m(d). If Commerce determines that a response to a request for information is deficient, Commerce shall inform the person submitting the response promptly as to the nature of the deficiency and, to the extent practicable, shall provide that person with an opportunity to remedy or explain the

deficiency in light of the relevant time limits.  19 U.S.C. § 1677m(d).  If that person submits

further information, but Commerce finds that the response is either unsatisfactory or not

submitted timely, Commerce may disregard all or part of the original and subsequent responses.

Id.

As described in Section I.A supra, Commerce notified GODACO promptly that its

submissions were deficient and provided GODACO with several opportunities to remedy or

explain the deficiencies.  For example, Commerce advised GODACO that its factors of

production and net weight reporting were deficient and provided a path to remediate those

deficiencies.  See, e.g., GODACO's SQR at 7 (requesting updated net weight information);

GODACO's SQR at 10 (noting an inconsistency in factors of production information provided in

GODACO's first submission).  The court concludes that Commerce's actions in this proceeding

as to 19 U.S.C. § 1677m are in accordance with the law.

### III.   Commerce's Refusal to Verify GODACO's Submissions is in Accordance With The Law

The third issue is whether Commerce's refusal to verify GODACO's submissions is in

accordance with the law.  Commerce will verify information relied upon in the final results of an

administrative review if: (1) a domestic interested party requests timely verification and no

verification under the relevant paragraph occurred during either of the two immediately

preceding administrative reviews, or (2) the Secretary of Commerce determines that "good

cause" for verification exists.  19 C.F.R. § 351.307(b)(1)(iv)–(v).

GODACO argues that good cause exists because it submitted timely ample data with extensive documentation and detailed explanations of the underlying methodology.  GODACO also cites 19 C.F.R. § 351.307(b)(1)(v).  GODACO's Br. at 45; see GODACO's Reply Br. at 18.

Defendant counters that it is not obliged to verify a respondent's submission when necessary information is missing from the record.  Def.'s Resp. at 51–52; IDM at 10 n.39. Defendant contends also that verification under 19 C.F.R. § 351.307(b)(1)(iv) is unavailable to GODACO because Commerce conducted a verification in the eleventh administrative review of the products at issue.  Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 81 Fed. Reg. 44,272 (Dep't. of Commerce July 7, 2016) (final results of admin. review) and accompanying Issues and Decision Mem. at 2; Def.'s Resp. at 51.  Defendant-Intervenors argue that Commerce declined properly to verify GODACO's submissions.  Def.-Inters.' Resp. Br. at 22–24.

The court concludes that Commerce was justified in refusing to verify GODACO's submissions because, as discussed in Section I.A.1 supra, Commerce identified a pattern of missing formulas and numbers that did not reconcile with the reported allocation methodology in GODACO's submitted material.  19 C.F.R. § 351.307(b)(1)(v); IDM at 11; BPI Memo at 3. Additionally, Commerce conducted a verification in one of the two prior administrative reviews of the products at issue, rendering 19 C.F.R. § 351.307(b)(1)(iv) unavailable to GODACO.  The court concludes that Commerce's refusal to verify GODACO's submissions is in accordance with the law because none of the reasons for conducting verification under 19 C.F.R. § 351.307(b)(1)(iv)–(v) are applicable to GODACO in this case.

IV.    **Commerce's Rejection of GODACO's Rebuttal Comments and Case Brief on The Basis That They Contained Untimely Filed New Factual Information is in Accordance With The Law**

The fourth issue is whether Commerce's rejection of GODACO's rebuttal comments and case brief as untimely filed new factual information is supported by substantial evidence.

Antidumping duty determinations are subject to strict statutory guidelines. 19 U.S.C. § 1675(a)(3). Commerce's regulations specify deadlines for submitting factual information. 19 C.F.R. § 351.301(c). Commerce must cease collecting information before making a final determination, and Commerce must provide the parties with a final opportunity to comment on the information obtained by Commerce upon which the parties have not previously had an opportunity to comment. 19 U.S.C. § 1677m(g). Commerce must disregard comments containing new factual information. Id. Commerce's interpretation of what constitutes factual information is upheld unless an "alternative reading is compelled by the regulation's plain language or by other indications of . . . intent at the time of the regulation's promulgation." Tri Union Frozen Prods., Inc. v. United States, 40 CIT __, __, 163 F. Supp. 3d 1255, 1287 (2016) (internal quotation marks and citations omitted).

Commerce rejected GODACO's rebuttal comments and case brief on the basis that the submissions contained untimely filed new factual information. GODACO's Rejected Rebuttal; GODACO's Rejected Br.; Letter from U.S. Dep't. of Commerce to GODACO Seafood Joint Stock Co., P.R. 274 (Aug. 15, 2017); Commerce's Rejection of GODACO's Br.[4]

---

[4] Although the IDM only explicitly references Commerce's rejection of GODACO's Rejected Rebuttal, the record reflects both Commerce's rejection of GODACO's Rejected Rebuttal and GODACO's Rejected Br. and documents the reasons why. IDM at 11; Commerce's Rejection of

GODACO argues that neither GODACO's Rejected Rebuttal nor GODACO's Rejected

Brief contained new factual information; instead, GODACO claims that what Commerce

identified as new factual information was actually previously submitted record information.

GODACO's Br. at 38–39.  GODACO attempts to distinguish <u>Tri Union</u> by arguing that, unlike

the case brief in <u>Tri Union</u>, the rejected rebuttal comments at issue here directly addressed

Defendant-Intervenors' arguments.  GODACO's Reply Br. at 15.

     Defendant counters that even if some of the information at issue was previously

represented in the record, GODACO's offerings of "new reporting methodologies and

substantive revisions to GODACO's calculations were substantive and untimely submitted new

factual information."  Def.'s Resp. at 44; IDM at 12.  Defendant-Intervenors concur.  Def.-

Inters.' Resp. Br. at 15–17.

     GODACO does not deny that the rebuttal comments and case brief at issue were

submitted past the deadline for new factual information.  <u>See</u> GODACO's Br. at 31–33; <u>see</u>

GODACO's Reply Br. at 15–16.  GODACO submitted entirely new U.S. sales and factors of

production databases with substantial revisions that advanced a different margin for GODACO.

Def.'s Resp. at 44–45.  GODACO's Rejected Rebuttal comments include information compiled

from other sources in the record, broken out newly by CONNUM.  <u>Compare</u> GODACO's

Section D Response at Ex. D-9.1 <u>with</u> GODACO's Rejected Rebuttal at Ex. 13 (Revised Ex. D-

9.1); <u>see</u> GODACO's SQR, Exs. S-26(b), S-43 (serving as a reference for GODACO's Rejected

Rebuttal at Ex. 13 (Revised Ex. D-9.1)).  GODACO's argument that it "simply summarized the

GODACO's Rebuttal; Commerce's Rejection of GODACO's Br.  Defendant argues that both
documents were properly rejected.  Def.'s Resp. at 42.

Excel cell location of all formulas previously submitted in digital form" is unsupported by the record.  GODACO's Reply Br. at 16.  It was reasonable for Commerce to view GODACO's documents as new factual information because the documents did not merely summarize prior-submitted information, but provided new reporting methodologies, substantive revisions to margin calculations, and new explanations of formulas.  IDM at 11–12; GODACO's Rejected Br., Ex. 7.  In this case, the court concludes that Commerce's determination that GODACO's changes to the information rendered the rebuttal comments and case brief untimely filed new factual information is supported by substantial evidence.

## V.   Commerce's Decision to Reject Golden Quality's Request to Rescind The Administrative Review

The fifth issue is whether Commerce's rejection of Golden Quality's request to rescind the administrative review is in accordance with the law.  Commerce will rescind an administrative review if a party requests rescission within ninety days of the date the notice of initiation of the requested review was published.  19 C.F.R. § 351.213(d)(1).  The Secretary may extend this time limit if the Secretary decides that it is reasonable to do so.  Id.  Reasonableness, as set out in 19 C.F.R. § 351.213(d)(1), is "the only legally applicable standard" that Commerce may apply in determining whether to extend the time limit for parties to file withdrawal requests of administrative reviews.  Glycine & More, Inc. v. United States, 880 F.3d 1335, 1345 (2018).

On January 12, 2017, the petitioners in the administrative action below withdrew their review request for forty-eight companies, including Golden Quality.  Petitioner's Withdrawal Request, P.R. 69 (Jan. 12, 2017).  Golden Quality did not file a request to withdraw by the deadline of January 12, 2017, which is ninety days from the publication of the initiation notice.

On January 23, 2017, eleven days after the applicable deadline, Golden Quality filed a letter

informing Commerce that it was "withdraw[ing] its request for an administrative review" and

"ask[ed] that the Department accept this withdrawal."  Letter from Mayer Brown LLP to U.S.

Dep't. of Commerce, P.R. 71 (Jan. 23, 2017).  Golden Quality did not file a request to extend the

deadline.

    First, the court finds that Commerce's rejection of Golden Quality's request to rescind the

administrative review was reasonable under the first clause of 19 C.F.R. § 351.213(d)(1) because

Golden Quality failed to request rescission within ninety days of the date the notice of initiation

of the requested review was published (i.e., January 12, 2017).  19 C.F.R. § 351.213(d)(1).  The

parties do not dispute that Golden Quality filed its late request for withdrawal on January 23,

2017, and thus Commerce was justified in not granting the withdrawal on this basis.

    Second, the court finds that Commerce's decision that Golden Quality's request to

rescind the administrative review should not be deemed a de facto request to extend the time

limit under 19 C.F.R. § 351.213(d)(1) was reasonable.  Golden Quality argues that even though it

filed an untimely request for withdrawal, and even though it did not request an extension of the

ninety-day withdrawal period, Commerce should have regarded the late-filed request for

withdrawal as an effective request for extension.  Golden Quality contends that "this is a

difference without distinction, because the record makes clear that Golden Quality was asking

Commerce to extend the 90-day deadline."  Golden Quality Br. at 17.  Commerce refused to

"reach a decision as to whether it should grant Golden Quality an extension . . . because [Golden

Quality] made no such request."  IDM at 24.  Commerce noted in its Final IDM that Golden

Quality "offered *no* explanation as to why Commerce should have accepted its late withdrawal

request. . . .   Commerce was not even required to apply the reasonableness test under its

regulations in this case because Golden Quality never actually asked Commerce to extend the

deadline to accept the untimely withdrawal request."  Def.'s Resp. at 70; IDM at 24.

   In support of its argument, Golden Quality describes the requirement to file an actual

request to extend the deadline as a "mother may I" request and a "hollow . . . and rigid adherence

to formality."  Golden Quality's Mot. at 17.  Golden Quality concedes that it did not frame its

untimely withdrawal request as a request to extend the deadline under 19 C.F.R.

§ 351.213(d)(1).  Id.  Golden Quality's assertion that the record shows that Golden Quality had

asked Commerce for an extension of the regulatory deadline is unsupported by the

record.  Golden Quality's withdrawal request did not solicit or otherwise consider an extension

of the deadline under 19 C.F.R. § 351.213(d)(1).  Letter from Mayer Brown LLP to U.S. Dep't

of Commerce, P.R. 71 (Jan. 23, 2017) (failing to consider an extension of the deadline under 19

C.F.R. § 351.213(d)(1)).  The court does not reach Golden Quality's argument about the

appropriate standard Commerce should employ in evaluating requests made under 19 C.F.R.

§ 351.213(d)(1) because Golden Quality's failure to request an extension of the deadline meant

that the withdrawal request was not properly before Commerce.  19 C.F.R. § 351.213(d)(1);

Golden Quality's Mot. at 10–16.[5]

---

[5] Golden Quality claims that a party's untimely withdrawal request in <u>Diamond Sawblades Mfrs.</u>
<u>Coal. v. United States</u>, 301 F. Supp. 3d 1326 (CIT 2018) "was not framed as a request to extend
the withdrawal deadline . . . ."  Golden Quality's Reply Br. at 6.  This statement is unsupported
by the record in that case.  The <u>Diamond Sawblades</u> party requesting withdrawal under 19 C.F.R.
§ 351.213(d)(1) specifically referenced both withdrawal and an extension of the deadline to
withdraw.  Joint Appendix at 87, 90, <u>Diamond Sawblades Mfrs. Coal. v. United States</u>, Consol.
Court No. 16-00124 (CIT 2018), ECF No. 70.  Unlike in <u>Diamond Sawblades</u>, Golden Quality's
withdrawal request did not additionally solicit or otherwise consider an extension of the deadline

The court finds that Golden Quality: (1) failed to file a proper request to withdraw its

administrative review by the applicable deadline and (2) failed to request an extension of the

ninety-day deadline because it merely filed a late request for withdrawal and never asked for an

extension of the deadline.  The court concludes accordingly that Commerce's refusal to decide

whether to grant an extension was reasonable because Commerce should not be required to

decide a request that was not made by a party.  The court sustains Commerce's decision to reject

Golden Quality's request to rescind the administrative review.

### VI.    South Vina Did Not Fail to Exhaust its Administrative Remedies

The sixth issue is whether South Vina exhausted its administrative remedies.  The court

requires the exhaustion of administrative remedies where appropriate.  28 U.S.C. § 2637(d).

Generally, exhaustion requires that a party submit an administrative case brief to Commerce that

presents all arguments that continue to be relevant to Commerce's final determination or results.

U.S. Steel Corp. v. United States, 42 CIT __, __, 348 F. Supp. 3d 1248, 1260 (2018).  A party

may seek judicial review of an issue not raised in a party's case brief if Commerce neglected to

address the issue until Commerce's final decision.  Qingdao Taifa Grp. Co. v. United States, 33

CIT 1090, 1093 (2009) (noting that otherwise the party would not have had a full and fair

opportunity to raise the issue at the administrative level).

---

under 19 C.F.R. § 351.213(d)(1).  Letter from Mayer Brown to U.S. Dep't of Commerce, P.R. 71
(Jan. 23, 2017) (failing to consider an extension of the deadline under 19 C.F.R.
§ 351.213(d)(1)).  Similarly, the Glycine party requested withdrawal under 19 C.F.R.
§ 351.213(d)(1) specifically referencing both withdrawal and an extension of the deadline to
withdraw, unlike the facts in the instant matter.

South Vina argues that it neither failed to exhaust its administrative remedies nor failed to adhere to Commerce's regulations.  South Vina's Reply Br. at 1.  Defendant argues that both regulatory authority and the doctrine of exhaustion preclude South Vina's substantive arguments.  Def.'s Resp. at 54; 19 C.F.R. § 351.309(c)(2) (requiring that parties submit case briefs presenting all arguments continuing in the submitter's view to be relevant to the final determination or final results).  Defendant notes that South Vina did not file an administrative case brief and that no party's administrative case brief raised the substantive arguments South Vina has raised in its brief here.  Def.'s Resp. at 55.

Commerce concedes that it "inadvertently omitted" South Vina from the Preliminary IDM's separate rate analysis.  IDM at 3; see PDM at 8.  The Preliminary IDM did not present South Vina with a separate rate issue to brief; consequently, South Vina did not file an administrative case brief raising the issues it now wishes to address.  PDM at 8; South Vina's Reply Br. at 1.  Because Commerce neglected to address South Vina in the separate rate analysis until the Final IDM, South Vina should not be faulted for failing to exhaust its administrative remedies.  The court concludes that South Vina acted in accordance with 19 C.F.R. § 351.309(c)(2) and South Vina's substantive arguments cannot be precluded on this basis.  On remand, the court directs Commerce to consider South Vina's substantive arguments as described in both its Memorandum of Law in support of its motion and its reply brief.  Mem. of Law in Supp. of South Vina's Mot., Sept. 19, 2018, ECF No. 33-1; South Vina's Reply Br.

**VII.   Whether The Rate Applied to The Separate Rate Respondents is Supported by Substantial Evidence and in Accordance With The Law**

The seventh issue is whether the rate applied to the separate rate respondents is supported by substantial evidence and in accordance with the law.  As discussed above, the court remands the issue of Commerce's application of adverse facts available to GODACO.  The rate applied to the separate rate respondents by Commerce in the underlying proceeding is tied to the rate that Commerce applied to GODACO.  Because the court cannot yet consider the rate on remand, the court cannot reach the issue of whether the rate applied to the separate rate respondents is supported by substantial evidence and in accordance with the law.  Commerce must reevaluate GODACO's rate on remand consistent with this opinion.

## CONCLUSION

For the foregoing reasons, the court remands this matter to Commerce for future proceedings in accordance with this opinion.  Accordingly, upon consideration of all papers and proceedings in this action, it is hereby

**ORDERED** that this action shall proceed in accordance with the following schedule:

1.  Commerce must file its remand determination on or before June 30, 2020;

2.  Commerce must file the administrative record on or before July 14, 2020;

3.  The Parties' comments in opposition to the remand determination must be filed on or before August 13, 2020;

4.  The Parties' comments in support of the remand determination must be filed on or before September 14, 2020;

   5.   The Joint Appendix must be filed on or before September 28, 2020.


                                                             /s/ Jennifer Choe-Groves
                                                    Jennifer Choe-Groves, Judge

Dated:     April 1, 2020
            New York, New York