Slip Op. 21-3

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GODACO SEAFOOD JOINT STOCK COMPANY,** | |
| **Plaintiff,** | |
| **and** | |
| **CAN THO IMPORT-EXPORT JOINT STOCK COMPANY, ET AL.,** | |
| **Consolidated Plaintiffs,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Consol. Court No. 18-00063** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **CATFISH FARMERS OF AMERICA, ET AL.,** | |
| **Defendant-Intervenors.** | |

## <u>OPINION AND ORDER</u>

[Sustaining in part and remanding in part the remand results of the U.S. Department of Commerce following the thirteenth administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: January 6, 2021

Andrew B. Schroth, Jordan C. Kahn, and Ned H. Marshak, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of Washington, D.C., for Plaintiff GODACO Seafood Joint Stock Company.

Andrew B. Schroth and Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of Washington, D.C., for Consolidated Plaintiff Golden Quality Seafood Corporation.  Andrew T. Shutz, Dhramendra N. Choudhary, Michael S. Holton, and Ned H. Marshak also appeared.

Robert G. Gosselink, Jonathan M. Freed, and Kenneth N. Hammer, Trade Pacific, PLLC, of Washington, D.C., for Consolidated Plaintiffs Can Tho Import-Export Joint Stock Company, Vinh Quang Fisheries Corporation, NTSF Seafoods Joint Stock Company, Green Farms Seafood Joint Stock Company, and Hung Vuong Corporation.

John J. Kenkel, Alexandra H. Salzman, Judith L. Holdsworth, and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, D.C., for Consolidated Plaintiff Southern Fishery Industries Company, Ltd.

Kara M. Westercamp, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel was Ian A. McInerney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Jonathan M. Zielinski and James R. Cannon, Jr., Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenors Catfish Farmers of America, Simmons Farm Raised Catfish, Inc., Magnolia Processing, Inc. (d/b/a Pride of the Pond), Heartland Catfish Company, Guidry's Catfish, Inc., Delta Pride Catfish, Inc., Consolidated Catfish Companies LLC (d/b/a Country Select Catfish), America's Catch, and Alabama Catfish Inc. (d/b/a Harvest Select Catfish, Inc.).

Choe-Groves, Judge:  This case involves frozen fish fillets, including

regular, shank, and strip fillets and portions thereof, of the species *Pangasius*

*Bocourti*, *Pangasius Hypophthalmus* (also known as *Pangasius Pangasius*), and

*Pangasius Micronemus* from the Socialist Republic of Vietnam ("Vietnam").  This

action arises from the thirteenth administrative review initiated in October 2016 by

the U.S. Department of Commerce ("Commerce").  Certain Frozen Fish Fillets

from the Socialist Republic of Vietnam ("Final Results"), 83 Fed. Reg. 12,717

(Dep't Commerce Mar. 23, 2018) (final results, final results of no shipments, and

partial rescission of the antidumping duty administrative review; 2015–2016); see

Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and

Decision Mem. for the Final Results of the Thirteenth Antidumping Duty Admin.

Review: 2015–2016, PD 337 (Mar. 14, 2018) ("IDM"); see also Certain Frozen

Fish Fillets from the Socialist Republic of Vietnam ("Prelim. Results"), 82 Fed.

Reg. 42,785 (Dep't Commerce Sept. 12, 2017) (preliminary results, preliminary

determination of no shipments, and partial rescission of the antidumping duty

administrative review; 2015–2016).  Before the court are the Final Results of

Redetermination Pursuant to Court Remand, ECF No. 77-1 ("Remand Results"),

pursuant to the court's decision in GODACO Seafood Joint Stock Co. v. United

States ("GODACO I"), 44 CIT __, 435 F. Supp. 3d 1342 (2020).  For the reasons

Consol. Court No. 18-00063                                              Page 4

set forth in this opinion, the court sustains in part and remands in part the <u>Remand Results</u>.

## BACKGROUND

The court presumes familiarity with the facts of this case.  <u>See</u> <u>GODACO I</u>, 44 CIT at __, 435 F. Supp. 3d at 1346–50.  In <u>GODACO I</u>, the court considered several Rule 56.2 motions for judgment on the agency record filed by the Parties. <u>See</u> <u>id.</u> at __, 435 F. Supp. 3d at 1347.  The court sustained in part and remanded in part Commerce's <u>Final Results</u>.  <u>Id.</u>

Commerce filed the <u>Remand Results</u> on July 21, 2020.  Plaintiff GODACO Seafood Joint Stock Co. ("GODACO" or "Plaintiff") filed comments.  Pl.'s Comments in Opp'n Remand Redetermination, ECF No. 79 ("GODACO Cmts."). Consolidated Plaintiffs Can Tho Import-Export Joint Stock Co., Green Farms Seafood Joint Stock Co., Hung Vuong Corp., NTSF Seafoods Joint Stock Co., and Vinh Quang Fisheries Corp. (collectively, "Consolidated Plaintiffs") filed comments jointly.  Comments of Consol. Pls. [] on Final Results of Redetermination Pursuant to Court Remand, ECF No. 80 ("Consol. Pls. Cmts." or "Consolidated Plaintiffs' Comments").  Consolidated Plaintiffs' Comments incorporated by reference arguments made previously in the Memorandum in Support of Motion for Judgment Upon the Agency Record of Consolidated

Plaintiffs Vinh Quang Fisheries Corp. et al.  Mem. in Supp. of Mot. for J. Upon the

Agency R. of Consol. Pls. Vinh Quang Fisheries Corp. et al., ECF No. 28-1

("Consol. Pls. Mot. for J.").  Consolidated Plaintiff Southern Fishery Industries Co.

("South Vina") filed a Rule 56.2 motion for judgment upon the agency record and

a reply brief, which included arguments opposing the rate imposed by Commerce

on South Vina.  Consol. Pl. [South Vina]'s Rule 56.2 Mot. for J. Upon the Agency

R., ECF No. 33 ("South Vina Mot. for J."); [Consol. Pl.] [South Vina] Reply Br.,

ECF No. 52.

     The court refers collectively to Consolidated Plaintiffs and South Vina as

"Separate Rate Plaintiffs."  The court also refers collectively to parties not

individually examined and assigned the all-others separate rate as "separate rate

respondents."  See generally Prelim. Results, 82 Fed. Reg. at 42,786 (listing

additional companies, including Consolidated Plaintiffs, as separate rate

respondents not individually examined.).

     Defendant United States ("Defendant") responded.  Def.'s Resp. Supp.

Remand Redetermination, ECF No. 83 ("Def. Cmts.").  Defendant-Intervenors

Catfish Farmers of America, Simmons Farm Raised Catfish, Inc., Magnolia

Processing, Inc. (d/b/a Pride of the Pond), Heartland Catfish Co., Guidry's Catfish,

Inc., Delta Pride Catfish, Inc., Consolidated Catfish Cos. LLC (d/b/a Country

Select Catfish), America's Catch, and Alabama Catfish, Inc. (d/b/a Harvest Select

Catfish, Inc.) (collectively, "Defendant-Intervenors" or "Catfish Farmers of

America") responded.  [Catfish Farmers of America's] Comments Supp. of

Remand Results, ECF No. 84 ("Catfish Farmers of America Cmts.").  GODACO

and Consolidated Plaintiff Golden Quality Seafood Corp. filed the joint appendix.

J.A., ECF Nos. 85, 86 ("Joint Appendix").  GODACO filed two notices of

supplemental authority.  Notice of Suppl. Authority, Dec. 8, 2020, ECF No. 87

("First Suppl. Authority"); Notice of Suppl. Authority, Dec. 28, 2020, ECF No. 89

("Second Suppl. Authority").

## ISSUES PRESENTED

This case presents the following issues:

1.  Whether Commerce's application of adverse facts available ("AFA")
    to GODACO is supported by substantial evidence;

2.  Whether Commerce's application of the AFA rate to GODACO is in
    accordance with the law; and

3.  Whether Commerce's application of GODACO's rate to Separate
    Rate Plaintiffs is in accordance with the law.

Consol. Court No. 18-00063                                                Page 7

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28

U.S.C. § 1581(c).  The court will hold unlawful any determination found to be

unsupported by substantial evidence on the record or otherwise not in accordance

with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.    Commerce's Application of AFA to GODACO

The first issue addressed by the court is whether Commerce's application of

AFA to GODACO is supported by substantial evidence.  Plaintiff challenges

Commerce's application of total AFA to GODACO, contending that 1) GODACO

provided all requested information to Commerce, and 2) GODACO cooperated to

the best of its ability.  GODACO Cmts. at 3–23.  Defendant argues that

Commerce's determinations that GODACO failed to provide necessary

information and did not cooperate to the best of its ability in the administrative

proceeding are supported by substantial evidence and asks the court to sustain

Commerce's application of total AFA to GODACO.  Def. Cmts. at 13–28.

If necessary information is not available on the record, or an interested party:

(1) withholds information that has been requested, (2) fails to provide such

information by the deadlines for submission of the information or in the form and

manner requested, (3) significantly impedes a proceeding, or (4) provides such

information but the information cannot be verified, then Commerce may rely on

facts otherwise available.  19 U.S.C. § 1677e(a)(1), (2)(A)–(D).  If a party fails to

cooperate to the best of its ability, Commerce may use an inference adverse to the

interests of that party in selecting from among the facts otherwise available.  Id.

§ 1677e(b).

  The U.S. Court of Appeals for the Federal Circuit has interpreted 19 U.S.C.

§ 1677e subsections (a) and (b) to have different purposes.  See Mueller Comercial

de Mexico, S. de R.L. De C.V. v. United States ("Mueller"), 753 F.3d 1227, 1232

(Fed. Cir. 2014) (discussing 19 U.S.C. § 1677e(a)–(b)).  Subsection (a) applies

whether or not any party has failed to cooperate fully with the agency in its

inquiry.  Id.  A respondent's mere failure to furnish requested information—for

*any reason*—requires Commerce to resort to other sources of information to

complete the factual record.  Id.  Subsection (b) applies only when Commerce

makes a separate, additional determination that the respondent failed to cooperate

by not acting to the best of its ability.  19 U.S.C. § 1677e(b); see also Canadian

Solar Int'l Ltd. v. United States, 43 CIT __, __, 378 F. Supp. 3d 1292, 1320 (2019)

(noting that "Commerce must invoke subsection (a) to reach subsection (b)").  A

party fails to cooperate to the best of its ability when it does not "conduct prompt,

careful, and comprehensive investigations of all relevant records that refer or relate

to the imports in question to the full extent of [its] ability to do so." <u>Nippon Steel

Corp. v. United States</u>, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (noting that

"intentional conduct, such as deliberate concealment or inaccurate reporting . . .

evinces a failure to cooperate"); <u>see also</u> <u>Essar Steel Ltd. v. United States</u>, 678 F.3d

1268, 1276 (Fed. Cir. 2012).

Commerce may consider an adverse inference when a respondent fails to

cooperate to the best of the respondent's ability, regardless of motivation or intent.

<u>Nippon Steel Corp.</u>, 337 F.3d at 1383.  This standard does not require perfection

and recognizes that mistakes sometimes occur, but it does not condone

inattentiveness, carelessness, or inadequate record keeping.  <u>Papierfabrik August

Koehler SE v. United States</u>, 843 F.3d 1373, 1379 (Fed. Cir. 2016) (quoting

<u>Nippon Steel Corp.</u>, 337 F.3d at 1382).  When making an adverse inference,

Commerce may rely on information derived from the petition, a final

determination in the investigation, a previous administrative review, or any other

information placed on the record.  <u>See</u> 19 U.S.C. § 1677e(b)(2); 19 C.F.R.

§ 351.308(c).

Consol. Court No. 18-00063                                                    Page 10

### A.   Application of Facts Available for Farming Factors of Production

Plaintiff argues that Commerce's reliance on facts otherwise available for

GODACO's farming factors of production is not supported by substantial

evidence.  GODACO Cmts. at 3–8.  GODACO asserts that compliance with

Commerce's instruction to report all factors of production on a control number

("CONNUM")-specific basis is impossible for farming factors of production.[1]  Id.

at 19–20.  GODACO states that it reported correct CONNUM-specific farming

factors of production in the administrative review.  Id. at 16.  The court remanded

this issue because Commerce did not support its prior analysis with proper

explanations and citations to evidence in the administrative record.  GODACO I,

44 CIT at __, 435 F. Supp. 3d at 1354–55.

On remand, Commerce relied upon 19 U.S.C. § 1677e(a)(1) and (2)(A)–(C)

to determine that the use of facts otherwise available was warranted and supported

its analysis with explanations and citations to the record.  Remand Results at 6–8.

Commerce stated that GODACO was required to report its farming factors of

production on a CONNUM-specific basis but failed to do so.  Id. at 7–8.

---

[1] A CONNUM is a contraction of the term control number and is Commerce jargon for a unique
product (defined in terms of a hierarchy of specified physical characteristics determined in each
antidumping proceeding).  Union Steel v. United States, 36 CIT 288, 291 (2012) (internal
quotation marks and citation omitted).

GODACO was required to provide Commerce with factors of production

information that reconciled to all of the CONNUMs at issue.  GODACO I, 44 CIT

at __, 435 F. Supp. 3d at 1351–52; GODACO Suppl. Questionnaire Resp., PD

197–98, CD 158–59, CD 160–186 at 12 (July 17, 2017) ("GODACO's SQR")

(requesting CONNUM-specific reporting for all of GODACO's factors of

production); IDM at 12 (noting that GODACO was to report factors of production

information on a CONNUM-specific basis); see also Mueller, 753 F.3d at 1232

(noting that regardless of the reason, a respondent's failure to provide requested

information requires Commerce to resort to other sources of information).

Commerce explained that evidence on the record established that GODACO

reported its farming factors of production on a "harvested-whole-live-fish" basis

instead of the CONNUM-specific basis requested by Commerce.  Remand Results

at 7–8; see, e.g., GODACO's SQR, Ex. S-26(b) (data tables showing that the factor

of production ratios for fish feed are equivalent to the mass of each fingerling

category divided by the total mass of all harvested live fish); see also GODACO

Section D Questionnaire Resp., PD 127, CD 95–96 (Apr. 19, 2017), Ex. D-19

(relating to medicine, nutrition, environmental treatment, lime, and salt), Ex. D-20

(relating to labor), Ex. D-21 (relating to electricity), Ex. D-9.5, Ex. D-9.6 (also

demonstrating factors of production ratios calculated on the basis of all harvested

live fish) as Ex. S-26(b).  GODACO concedes that it allocated its farming factors

of production on a "total harvested fish" basis.  GODACO Cmts. at 17

("GODACO clearly explained how it allocated all upstream farming inputs in its

vertically integrated operation over total harvested fish from each pond during the

[period of review].").

     This Court has found it reasonable for Commerce to require respondents to

report all factors of production on a CONNUM-specific basis, including inputs

such as farming factors of production.  See An Giang Fisheries Imp. & Exp. Joint

Stock Co. v. United States ("An Giang"), 42 CIT __, __, 287 F. Supp. 3d 1361,

1367–71 (2018) (concerning the eleventh administrative review of the antidumping

duty order at issue here).  Because Commerce cited substantial evidence on the

record establishing that GODACO failed to provide the required CONNUM-

specific information, the court finds that Commerce determined correctly to use

facts available.  Remand Results at 7–8.  In addition to GODACO's failure to

provide requested CONNUM-specific reporting, this court previously sustained

Commerce's determination that the record contained additional deficiencies,

including: 1) lack of reconciliation of GODACO's factors of production

information with the CONNUMs at issue; 2) GODACO's net weight reporting;

and 3) misallocated factors of production that co-mingled subject products with

non-subject products that had a higher water content.  GODACO I, 44 CIT at __,

435 F. Supp. 3d at 1352.  The court concludes that substantial evidence on the

record supports Commerce's determination that GODACO failed to provide

necessary information pursuant to 19 U.S.C. § 1677e(a).

### B.   GODACO's Lack of Cooperation to the Best of its Ability

The next inquiry is whether Commerce's determination that GODACO

failed to cooperate by not acting to the best of its ability under 19 U.S.C.

§ 1677e(b) is supported by substantial evidence.  GODACO argues that it

cooperated to the best of its ability because it was purportedly impossible to report

its farming factors of production on a CONNUM-specific basis.  GODACO Cmts.

at 22–23.  GODACO asserts that it implemented a CONNUM-specific

methodology and that any deficiencies in GODACO's reporting are excusable

because it is the first respondent to the underlying antidumping duty order to

provide factors of production information in a CONNUM-specific format.  Id. at 3,

9.  Defendant responds that GODACO reported its factors of production on the

wrong basis and that the adverse inference is otherwise appropriate.  Def. Cmts. at

21–28.  The court remanded for Commerce to explain how its application of an

adverse inference was supported by substantial evidence under 19 U.S.C.

§ 1677e(b).  GODACO I, 44 CIT at __, 435 F. Supp. 3d at 1355.

Consol. Court No. 18-00063                                             Page 14

On remand, Commerce determined that GODACO failed to act to the best of

its ability to comply with Commerce's requests for CONNUM-specific reporting.

Remand Results at 8–11.  Commerce explained that GODACO failed to cooperate

"by not developing a methodology to report CONNUM-specific sales and cost

information (which is essential to the accurate calculation of GODACO's dumping

margin), as Commerce requested on multiple occasions . . . ."  Id. at 9.  Commerce

stated that not only was necessary information missing from the record, but

respondents to the antidumping duty order had been on notice of the CONNUM-

specific reporting requirement for years and it was within GODACO's ability to

provide such information.  Id. at 9–10.  This Court has recognized Commerce's

requests for CONNUM-specific reporting since as early as the eighth

administrative review, noting that Commerce put respondents on advance notice

about the CONNUM-specific requirement.  An Giang, 42 CIT at __, 287 F. Supp.

3d at 1369–70.  The court in An Giang stated that "[g]iven the advance notice

afforded to respondents, the court cannot find that Commerce's request for

CONNUM-specific reporting, here, was unreasonable . . . ."  Id. at __, 287 F.

Supp. 3d at 1370 (referring to the eleventh administrative review).  This case

concerns the thirteenth administrative review.  Because respondents had advance

notice for several years of Commerce's request for CONNUM-specific reporting,

the court holds that it was reasonable for Commerce to expect GODACO to provide CONNUM-specific information and be more forthcoming with its responses.

Commerce may apply an adverse inference in circumstances under which it is reasonable for the agency "to expect that more forthcoming responses should have been made." Nippon Steel Corp., 337 F.3d at 1382. Commerce's application of an adverse inference is reasonable because Commerce expected that GODACO would have collected and reported factors of production information on a CONNUM-specific basis after giving respondents advance notice for several years that CONNUM-specific information would be required in this administrative review. Remand Results at 40–42.

To summarize, the court finds that Commerce's determination that GODACO failed to provide necessary information was supported by substantial evidence, and it was appropriate under 19 U.S.C. § 1677e(a) to use facts otherwise available. Furthermore, because GODACO failed to cooperate to the best of its ability to obtain and produce the requested information, Commerce was justified in concluding that GODACO had not acted to the best of its ability and reasonably used an adverse inference under 19 U.S.C. § 1677e(b) in selecting the facts otherwise available.

Consol. Court No. 18-00063                                                Page 16

## II.     Commerce's Application of the AFA Rate to GODACO

The second issue is whether Commerce's application of the AFA rate of

$3.87 per kilogram to GODACO is in accordance with the law.  The court

remanded this issue pending Commerce's explanation of its adverse inference

determination.  GODACO I, 44 CIT at __, 435 F. Supp. 3d at 1355, 1360.

On remand, Commerce continued to assign a rate of $3.87 per kilogram to

GODACO.  Remand Results at 19.  Commerce calculated the rate of $3.87 per

kilogram in a new shipper review conducted during the eighth administrative

review of the antidumping duty order at issue.  Id. at 45.  The $3.87 per kilogram

rate is the highest margin calculated in this proceeding.  Id. at 3.  GODACO argues

that the $3.87 per kilogram rate is aberrational because it exceeds the second-

highest rate by approximately $1.50 per kilogram and is based on a new shipper

review.  GODACO Cmts. at 23–30.  GODACO contends also that Commerce is

required to corroborate the AFA rate.  Id.  Defendant responds that the $3.87 per

kilogram rate is not aberrational or otherwise inappropriate and does not need to be

corroborated under the applicable statute.  Def. Cmts. at 28–30.

If Commerce uses an inference that is adverse to the interests of a party

under 19 U.S.C. § 1677e(b)(1)(A) in selecting among the facts otherwise available,

then Commerce may use a dumping margin from any segment of the proceeding

under the antidumping order.  19 U.S.C. § 1677e(d); <u>Zhejiang Zhaofeng Mech. &</u>

<u>Elec. Co. v. United States</u>, 43 CIT __, __, 416 F. Supp. 3d 1395, 1401 (2019).

Under 19 U.S.C. § 1677e(c)(2), Commerce is not required to corroborate rates

applied in a previous segment of the same proceeding.  <u>See</u> 19 U.S.C.

§ 1677e(c)(2) (Commerce "shall not be required to corroborate any dumping

margin or countervailing duty applied in a separate segment of the same

proceeding.").  Here, Commerce determined the rate applied to GODACO in the

eighth administrative review of the antidumping duty order, and subsequently

applied this rate to GODACO by application of facts available with an adverse

inference in the thirteenth administrative review.  <u>Remand Results</u> at 45.

Commerce thus applied the rate from a separate segment of these proceedings and

was therefore under no obligation to corroborate.

Commerce may apply the highest rate based on Commerce's evaluation of

the situation that resulted in Commerce's use of an adverse inference in selecting

among the facts otherwise available.  19 U.S.C. § 1677e(d)(2) ("[T]he

administering authority may apply any of the countervailable subsidy rates or

dumping margins specified . . . including the highest such rate or margin, based on

the evaluation by the administering authority of the situation that resulted in the

administering authority using an adverse inference in selecting among the facts

otherwise available."). Commerce supported its selection of the highest rate in the

Remand Results under 19 U.S.C. § 1677e(d)(2) by explaining that GODACO

provided information that was unusable to Commerce, failed to correct its deficient

reporting when it had the opportunity to do so, otherwise did not act to the best of

its ability, and failed to provide any record evidence undermining the

reasonableness of the use of the $3.87 per kilogram rate for total AFA. Remand

Results at 44–49. Because Commerce provided a sufficient evaluation of the

specific situation to justify its selection of the highest rate under 19 U.S.C.

§ 1677e(d)(2), the court concludes that Commerce's selection of the AFA rate is in

accordance with the law. The court sustains Commerce's selection of the $3.87

per kilogram rate for total AFA as applied to GODACO.

### III.    Commerce's Application of GODACO's AFA Rate to Separate Rate Plaintiffs

The third issue before the court is whether the total AFA rate applied to

Separate Rate Plaintiffs is in accordance with the law. Consolidated Plaintiffs and

South Vina argue that Commerce's application of GODACO's total AFA rate to

Separate Rate Plaintiffs is unreasonable and not in accordance with the law.

Consol. Pls. Mot. for J. at 7–30; South Vina Mot. for J. at 7–13. The court did not

opine on this issue in GODACO I because the court remanded the issue of whether

GODACO's rate was supported by substantial evidence.  GODACO I, 44 CIT at

__, 435 F. Supp. 3d at 1360.  The court directed Commerce to consider South

Vina's arguments on remand after finding that South Vina did not fail to exhaust

its administrative remedies.  Id.

On remand, Commerce considered South Vina's and Consolidated

Plaintiffs' substantive concerns under protest, arguing that South Vina failed to

exhaust its administrative remedies because South Vina did not submit comments

on the Final Results.  Remand Results at 12.  Commerce continued to determine

that the assignment of GODACO's total AFA rate of $3.87 per kilogram to

Separate Rate Plaintiffs, including South Vina, was appropriate.  Id. at 2.

GODACO is the only individually-examined respondent remaining under review

in this proceeding and received a total AFA rate, which Commerce applied to

cooperating Separate Rate Plaintiffs.  Id. at 20, 48–49; Def. Cmts. at 12.

Commerce explained that it applied the "expected method" under Section

1673d(c)(5)(B), yet the court observes that Commerce also stated that it applied

"any reasonable method" under the statutory exception.  Remand Results at 13; see

also Consol. Pls. Mot. for J. at 17–19 (Consolidated Plaintiffs note that Commerce

did not apply the "expected method" because it did not weight-average any rates

but rather used the "any reasonable method" approach).  Commerce asserted that

the statute permits "the use of 'any reasonable method' to establish the estimated all-others rate for exporters and producers not individually investigated, including 'averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.'" Remand Results at 13.

Commerce stated that 19 U.S.C. § 1673d(c)(5)(B) permitted Commerce to apply the AFA rate that Commerce selected for GODACO to Separate Rate Plaintiffs. Id. at 12–20. Consolidated Plaintiffs counter that Commerce's determination is unlawful because Commerce's application of GODACO's AFA rate to cooperating Separate Rate Plaintiffs is unreasonable. Consol. Pls. Mot. for J. at 9. Consolidated Plaintiffs and South Vina contend that Commerce instead should use the more reasonable rate of $0.69 per kilogram applied to cooperative separate rate respondents in the immediately preceding administrative review. Id. at 12; South Vina Mot. for J. at 11–13.

Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining it is sold in the United States at less than fair value. 19 U.S.C. § 1673. Under the general rule of § 1673d(c)(5)(A), Commerce determines an all-others rate assigned to non-examined companies by calculating the weighted average of the estimated weighted average dumping margins established for exporters and producers

individually investigated, excluding any zero and de minimis margins, and any

margins determined entirely on the basis of facts available, including AFA. Id.

§ 1673d(c)(5)(A); see Albemarle Corp. & Subsidiaries v. United States, 821 F.3d

1345, 1351 (Fed. Cir. 2016). If the estimated weighted average dumping margins

established for all exporters and producers individually investigated are zero or de

minimis, or are determined entirely under 19 U.S.C. § 1677e, Commerce may

invoke an exception to establish a separate rate for exporters and producers not

individually investigated. 19 U.S.C. § 1673d(c)(5)(B). The Statement of

Administrative Action ("SAA") provides guidance that when the dumping margins

for all individually examined respondents are determined entirely on the basis of

the facts available or are zero or de minimis, the "expected method" of determining

the all-others rate is to weight-average the zero and de minimis margins and

margins determined pursuant to the facts available, provided that volume data is

available. Uruguay Round Agreements Act, SAA, H.R. Doc. No. 103-316, vol. 1,

at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201. Commerce may depart

from the "expected method" and use "any reasonable method," but only if

Commerce reasonably determines that the expected method is not feasible or

results in an average that would not be reasonably reflective of potential dumping

margins. See 19 U.S.C. § 1673d(c)(5)(B); Navneet Publ'ns (India) Ltd. v. United

Consol. Court No. 18-00063                                            Page 22

States, 38 CIT __, __, 999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following

hierarchy [is applied] when calculating all-others rates—(1) the '[g]eneral rule' set

forth in § 1673d(c)(5)(A), (2) the alternative 'expected method' under

§ 1673d(c)(5)(B), and (3) any other reasonable method when the 'expected

method' is not feasible or does not reasonably reflect potential dumping

margins."); see also SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201;

Albemarle Corp., 821 F.3d at 1351–52 (quoting SAA at 873, reprinted in 1994

U.S.C.C.A.N. at 4201).  Commerce must determine that the expected method is not

feasible or would not be reasonably reflective of the potential dumping margins for

non-investigated exporters or producers based on substantial evidence.  Albemarle

Corp., 821 F.3d at 1352–53; see also Changzhou Hawd Flooring Co. v. United

States, 848 F.3d 1006, 1012 (Fed. Cir. 2017).  The exception in 19 U.S.C.

§ 1673d(c)(5)(B) applies expressly to market economy proceedings but has been

extended to non-market economy proceedings as well.  Albemarle Corp., 821 F.3d

at 1352 n.6.

> Commerce determined on remand that the expected method:
>
> demonstrates that the Act clearly envisions that Commerce base the
> separate rate on the experience of all of the individually examined
> respondents, including those assigned an AFA rate, where all of the
> dumping margins calculated for the individually examined respondents
> are zero, *de minimis*, or based entirely on facts available.

Remand Results at 13.  Commerce stated that its assignment of GODACO's AFA

rate to Separate Rate Plaintiffs was consistent with legal precedent and

Commerce's practice.  Id.  Commerce contended that the rate assigned to Separate

Rate Plaintiffs was reflective of the potential dumping margin because it

represented the period of review dumping margin assigned to the sole individually-

examined respondent.  Id. at 19–20.

The court observes that Commerce did not appear to employ the "expected

method" of determining the all-others rate in this case, as Commerce did not

weight-average the zero and de minimis margins and margins determined pursuant

to the facts available, but Commerce instead applied the "any reasonable method"

approach by using the one rate determined pursuant to AFA as the all-others rate

applied to Separate Rate Plaintiffs.  Id.  Because Commerce departed from the

"expected method" and employed the "any reasonable method" approach,

Commerce was required first to demonstrate that the expected method was not

feasible or resulted in an average that would not be reasonably reflective of the

potential dumping margins, which Commerce did not do here.  See 19 U.S.C.

§ 1673d(c)(5)(B).

Notwithstanding Commerce's failure to substantiate its departure from the

"expected method," the court considers whether Commerce's use of the "any

reasonable method" approach to apply GODACO's total AFA rate to Separate

Rate Plaintiffs is in accordance with the law.  Commerce did not cite any record

evidence to support the reasonableness of GODACO's total AFA rate of $3.87 per

kilogram as applied to cooperative Separate Rate Plaintiffs.  Commerce stated

merely that the relevant statutes and caselaw did not prohibit the use of an AFA

rate under the expected method, that the AFA rate was contemporaneous due to its

application to GODACO in the same administrative review, and that GODACO's

rate represented the dumping margin assigned to the sole individually-examined

respondent remaining in the administrative review.  Remand Results at 13–20.  To

the contrary, although it is not their burden to provide such evidence, Consolidated

Plaintiffs cite record evidence of an apparently more reasonable rate of $0.69 per

kilogram that was assigned to separate rate respondents in the prior twelfth

administrative review.  Consol. Pls. Mot. for J. at 17–18.  Consolidated Plaintiffs

assert that GODACO's AFA rate was derived from a rate calculated five years

prior to the present administrative review and was neither timely nor reasonably

reflective of Separate Rate Plaintiffs' potential dumping margins.  Consol. Pls.

Mot. for J. at 26.  Consolidated Plaintiffs and South Vina note that Commerce in

the past has determined that it was reasonable to carry forward rates from prior

reviews in other administrative proceedings.  Consol. Pls. Mot. for J. at 24–25;

South Vina Mot. for J. at 11–13.

Commerce is required to support its application of the "any reasonable

method" exception in 19 U.S.C. § 1673d(c)(5)(B) by demonstrating that the

calculated margin is reasonable.  The rate selected must serve the purpose of

calculating dumping margins as accurately as possible.  The court concludes that

Commerce's determination to apply a total AFA rate to fully cooperating Separate

Rate Plaintiffs is unreasonable and unsupported by any evidence on the record.  To

the contrary, the court observes that evidence on the record suggests instead that

Separate Rate Plaintiffs' rate may be reasonably closer to the $0.69 per kilogram

rate assigned to separate rate respondents in the prior twelfth administrative

review, rather than the total AFA rate of $3.87 per kilogram from the thirteenth

administrative review.

The court remands Commerce's assignment of the total AFA rate to fully

cooperating Separate Rate Plaintiffs as unreasonable and not in accordance with

the law.  The court directs Commerce to reevaluate the rate applied to Separate

Rate Plaintiffs in light of the evidence on the record as a whole and in accordance

with this opinion.

Consol. Court No. 18-00063                                          Page 26

## CONCLUSION

For the foregoing reasons, the court sustains in part and remands in part Commerce's <u>Remand Results</u>.

Accordingly, it is hereby

**ORDERED** that the <u>Remand Results</u> are remanded to Commerce to reevaluate its determination regarding the dumping margin for Separate Rate Plaintiffs; and it is further

**ORDERED** that Commerce shall afford the parties at least twelve (12) business days to comment on the draft second remand results; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

1.  Commerce shall file the second remand results on or before March 5, 2021;

2.  Commerce shall file the administrative record on or before March 19, 2021;

3.  Comments in opposition to the second remand results shall be filed on or before April 23, 2021;

4.  Comments in support of the second remand results shall be filed on or before May 28, 2021; and

Consol. Court No. 18-00063                                            Page 27


    5.      The joint appendix shall be filed on or before June 18, 2021.


/s/   Jennifer Choe-Groves

Jennifer Choe-Groves, Judge

Dated:    January 6, 2021
       New York, New York