A-552-801<br>
Remand (Slip Op. 21-03)<br>
**Public Document**<br>
E&C/OV:  Team

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

*GODACO Seafood Joint Stock Co. v. United States*
Court No. 18-00063, Slip Op. 21-03 (CIT January 6, 2021)

**I.    SUMMARY**

The Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *GODACO Seafood Joint Stock Co. v. United States*, Court No. 18-00063, Slip Op. 21-03 (CIT January 6, 2021) (*GODACO II*).  These final results relate to Commerce's method for calculating the separate rate for companies not selected for individual examination (separate rate companies) that demonstrated they were eligible for a separate rate in the 2015-2016 administrative review of the antidumping duty order on certain frozen fish fillets (fish fillets) from the Socialist Republic of Vietnam (Vietnam)[1] and are party to this litigation.[2]

In *GODACO II*, the Court directed Commerce to reevaluate the rate applied to the separate rate companies in light of the evidence on the record.[3]  In accordance with *GODACO II*, Commerce, under respectful protest,[4] has revised its approach for calculating a separate rate in

---

[1] *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:  Final Results, Final Results of No Shipments, and Partial Rescission of the Antidumping Duty Administrative Review; 2015-2016*, 83 FR 12717 (March 23, 2018) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] Commerce will adjust the separate rate for those parties who participated in the underlying litigation.  Separate rate companies Can Tho Import-Export Joint Stock Company (aka CASEAMEX) (CASEAMEX), Vinh Quang Fisheries Corporation (Vinh Quang), NTSF Seafoods Joint Stock Company (NTSF Seafoods), Green Farms Seafood Joint Stock Company (Green Farms Seafood), Hung Vuong Corporation (Hung Vuong Group), and Southern Fishery Industries Company, Ltd. (South Vina) participated in the underlying litigation.  *See* CIT No. 18-00063.  Accordingly, the redetermined separate rate will apply to the aforementioned companies (hereinafter referred to as the "separate rate companies").
[3] *See GODACO II* at 25.
[4] *See Viraj Group Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).

this review and has considered the rates determined for separate rate companies in prior reviews in assigning a rate to the separate rate companies in this segment of the proceeding. For the reasons set forth below, we have modified the rate assigned to the separate rate companies.

## II.     BACKGROUND

### A.    Commerce's *Final Results*

On March 23, 2018, Commerce published the *Final Results* of the underlying administrative review.[5] Commerce determined that the sole mandatory respondent remaining under review, GODACO Seafood Joint Stock Company (GODACO), failed to provide information that was requested of it and did not act to the best of its ability in responding to our requests for information. Accordingly, Commerce applied adverse facts available (AFA) to assign a dumping margin to GODACO, in accordance with sections 776(a) and (b) of the Tariff Act of 1930, as amended (the Act).[6] Specifically, Commerce applied the highest dumping margin calculated in the proceeding, *i.e.*, a rate of $3.87/kilogram (kg) calculated in a prior new shipper review, to GODACO.[7] As the only margin applicable to a company under review, Commerce also applied the $3.87/kg rate to the separate rate companies.[8] GODACO appealed Commerce's decision to base its margin on total AFA, and the separate rate companies contested our selection of $3.87/kg as the separate rate.

---

[5] *See generally Final Results*.
[6] *Id.*, 83 FR at 12717; *see also Final Results* IDM at Comment 1.
[7] *See Final Results* IDM at Comments 1 and 2.
[8] In the *Final Results*, Commerce found that South Vina was entitled to a separate rate. Commerce inadvertently omitted any discussion of South Vina's separate rate status from the preliminary results of this review and, therefore, Commerce addressed the company's separate rate status with the issuance of the *Final Results*. South Vina first commented on its separate rate status, and the assignment of a rate, in a motion to the Court. *See* South Vina's Motion for Judgment on the Agency Record at 6-7 (ECF No. 33) (Brief of South Vina).

**B.**     *GODACO I* [9]

On April 1, 2020, the Court issued *GODACO I*, which addressed seven issues:  (1) whether Commerce's application of AFA to GODACO was supported by substantial evidence; (2) whether Commerce acted in accordance with section 782(d) of the Act, in applying AFA to GODACO; (3) whether Commerce's refusal to verify GODACO's submissions was in accordance with the law; (4) whether Commerce's rejection of GODACO's rebuttal comments and case brief as untimely-filed new factual information was supported by substantial evidence; (5) whether Commerce's rejection of the withdrawal of review request filed by Golden Quality Seafood Corporation, a mandatory respondent, was in accordance with the law; (6) whether South Vina exhausted administrative remedies; and (7) whether Commerce's selection of the rate applied to the separate rate companies was supported by substantial evidence and in accordance with the law.

The Court affirmed Commerce's decision, with respect to issues 2, 3, 4, and 5 but remanded issue 1 to Commerce for further consideration.  With respect to issue 6, the Court determined that South Vina was not required to comment on the preliminary results of the review due to the company's omission from Commerce's preliminary analysis.  The Court held that South Vina did not fail to exhaust its administrative remedies and Commerce was required to consider the company's arguments regarding the assignment of a separate rate made for the first time in the context of this litigation.  As a consequence, the Court also remanded issue 7 to Commerce.

---

[9] *See GODACO Seafood Joint Stock Co. v. United States*, Court No. 18-00063, Slip Op. 20-42 (CIT April 1, 2020) (*GODACO I*).

C.   **Commerce's First Remand Redetermination**[10]

In the First Remand Redetermination, Commerce provided additional explanation regarding its application of AFA to GODACO. We explained that GODACO failed to provide necessary information (*i.e.*, accurate factors of production data), in the form and manner requested by Commerce, which prevented Commerce from calculating an accurate dumping margin for the company.[11] Additionally, we explained that GODACO failed to act to the best of its ability to comply with Commerce's requests for information, because it did not develop an appropriate reporting methodology despite being on notice of such requirements.[12]

With respect to our assignment of GODACO's rate to the separate rate companies, Commerce explained that it looks to section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation, for guidance when calculating the rate for companies which were not selected for individual examination in an administrative review.[13] Under section 735(c)(5)(A) of the Act, the all-others rate is normally "an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero or *de minimis* margins, and any margins determined entirely {on the basis of facts available}."

We further noted that, where all of the dumping margins calculated for the individually-examined respondents are zero, *de minimis*, or based entirely on facts available, establishment of a separate rate is governed by section 735(c)(5)(B) of the Act.[14] Section 735(c)(5)(B) of the Act permits, in this situation, the use of "any reasonable method" to establish the estimated all-others

---

[10] *See* Final Results of Redetermination Pursuant to *GODACO Seafood Joint Stock Co. v. United States*, Court No. 18-00063, Slip Op. 20-42 (CIT April 1, 2020), dated July 21, 2020 (First Remand Redetermination).
[11] *Id.* at 5-8.
[12] *Id.* at 8-11.
[13] *Id.* at 13.
[14] *Id.*

4

rate for exporters and producers not individually investigated, including "averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." Commerce observed that relying on such an average is identified as the "expected method" in the SAA[15] – demonstrating that the Act envisions that Commerce should base the separate rate on the experience of the individually-examined respondent(s), including those assigned an AFA rate, in instances where all of the dumping margins for the individually-examined respondents are zero, *de minimis*, or based entirely on facts available. We explained that our approach in the *Final Results*, therefore, was consistent with the Act and the SAA.

      We also explained that our approach was consistent with the Court of Appeals for the Federal Circuit (CAFC)'s decision in *Albemarle*.[16] In *Albemarle*, the CAFC found that relying on rates from previous review segments for non-selected respondents is generally inappropriate, with two exceptions: (1) "where there is evidence that the overall market and the dumping margins have not changed from period to period;" and (2) where AFA was applied with respect to a non-participating mandatory respondent in a previous review, "a prior dumping margin imposed against an exporter in an earlier administrative review continues to be valid if the exporter fails to cooperate in a subsequent administrative review."[17] We explained that neither of these criteria applied here. The first consideration does not apply because the dumping margins calculated over the course of this proceeding have fluctuated widely; the second is inapplicable to the separate rate companies. We cited numerous post-*Albemarle* administrative

---

[15] *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. 103-316, vol. 1 (1994) (SAA), at 4201.
[16] *See Albemarle Corp. v. United States*, 821 F. 3d 1345, 1356 (Fed. Cir. 2016) (*Albemarle*).
[17] *Id.* at 1357-58.

proceedings in support of Commerce's practice in this regard.[18]  South Vina did not comment on the draft results issued during the first remand proceeding.

C.    *GODACO II*

On January 6, 2021, the Court issued *GODACO II*.  The Court sustained Commerce's application of total AFA to GODACO, finding that the decision was supported by substantial evidence.[19]  The Court further determined that Commerce's selection of the rate to be assigned to GODACO, *i.e.*, a calculated rate of $3.87/kg from a prior review, was in accordance with law.[20]

However, the Court again remanded Commerce's determination regarding the assignment of the $3.87/kg rate to the separate rate companies.  The Court disagreed with Commerce's statement that it had applied the "expected method" under the SAA.[21]  The Court stated:

> Commerce did not appear to employ the "expected method" of determining the all-others rate in this case, as Commerce did not weight-average the zero and de minimis {sic} margins and margins determined pursuant to the facts available, but Commerce instead applied the "any reasonable method" approach by using the one rate determined pursuant to AFA as the all-others rate applied to Separate Rate Plaintiffs.  Because Commerce departed from the "expected method" and employed the "any reasonable method" approach, Commerce was required first to demonstrate that the expected method was not feasible or resulted in an average that would not be reasonably reflective of the potential dumping margins, which Commerce did not do here.[22]

The Court also held that "{n}otwithstanding Commerce's failure to substantiate its departure from the 'expected method,' it would consider whether Commerce's use of the 'any reasonable method' approach to apply GODACO's total AFA rate to the separate rate companies was in accordance with the law."[23]  The Court held that "Commerce is required to support its

---

[18] *See* First Remand Redetermination at 15-17.
[19] *See GODACO II* at 7-15.
[20] *Id.* at 16-18.
[21] *Id.* at 19.
[22] *Id.* at 23 (internal citations omitted).
[23] *Id.* at 23-24.

6

application of the 'any reasonable method' exception … by demonstrating that the calculated margin is reasonable."[24]  The Court found that Commerce failed to cite any record evidence to support the reasonableness of GODACO's total AFA rate of $3.87/kg as applied to the separate rate companies.[25]  Hence, the Court concluded that Commerce's determination to apply a total AFA rate to fully cooperating separate rate companies is unreasonable and unsupported by any evidence on the record.[26]  As a result, the Court again remanded the matter to Commerce "to reevaluate the rate applied to {the separate companies} in light of the evidence on the record as a whole and in accordance with this opinion."[27]

### III.  ANALYSIS[28]

For the reasons stated below, we respectfully disagree with the Court's conclusion in *GODACO II* that Commerce did not apply the expected method in its selection of a separate rate in the underlying administrative review.  However, consistent with the Court's order, and under respectful protest, we have assigned a revised rate to the separate rate companies.

As an initial matter, the Court stated that Commerce did not properly characterize its approach, because "Commerce explained that it applied the 'expected method' under Section 1673d(c)(5)(B), yet the court observes that Commerce also stated that it applied 'any reasonable method.'"[29]  We do not believe the Court's statement reflects an accurate interpretation of the provision.  The "Exception" under section 735(c)(5)(B) of the Act contemplates that Commerce will rely on "any reasonable method" to calculate a separate rate, and then it specifies one such method:  the expected method.  Therefore, Commerce accurately described its methodology as

---

[24] *Id.* at 25.
[25] *Id.* at 24.
[26] *Id.* at 25.
[27] *Id.*
[28] *See Draft Results Of Redetermination Pursuant To Court Remand*, *GODACO Seafood Joint Stock Co. v. United States*, Court No. 18-00063, Slip Op. 21-03 (CIT January 6, 2021), dated February 8, 2021 (Draft Results).
[29] *Id.* at 19.

7

being both (1) pursuant to the expected method, and (2) a reasonable approach to separate rate assignment. Despite this, it appears that the Court has determined that Commerce could not have applied the expected method because the underlying review had only one company respondent remaining under individual examination, *i.e.*, GODACO, while section 735(c)(5)(B) of the Act references "compan<u>ies</u>" and an "<u>average</u>" of rates.[30] Commerce believes this to be an incorrect interpretation of the Act. The Court has previously found, in the context of separate rate assignment, that "there is no requirement for multiple data points to determine an average. … In the case of a single data point, both the simple average and the weighted average will be the same as the single data point."[31] The Court has also found that a construction of sections 735(c)(5)(A)-(B) of the Act requiring the existence of multiple rates is untenable.[32] If multiple rates are required to construct an "average" for the derivation of a separate rate, then it would be impossible to apply the "General Rule" (under section 735(c)(5)(A) of the Act) or the "expected method" approach under the "Exemption" (section 735(c)(5)(B) of the Act) in any case where there is a single company under review, because both provisions reference multiple rates.[33] For these reasons, Commerce believes that it can, as it did, apply the expected method by relying on a single company's rate when assigning the separate rate pursuant to section 735(c)(5)(B) of the

---

[30] *Id.* at 23 (finding that Commerce did not apply the expected method because "Commerce did not weight-average the zero and de minimis margins and margins determined pursuant to the facts available").
[31] *See YC Rubber Co. (N. Am.) LLC v. United States*, Court No. 19-00069, Slip Op. 20-189 (CIT December 22, 2020), at 16 (rejecting plaintiff's assertion that "the statutory reference to an 'average' in section {735(c)(5)(A)} requires more than one rate"); *see also Soc Trang Seafood Joint Stock Co. v. United States*, 321 F. Supp. 3d 1329, 1347 (CIT June 21, 2018) (*Soc Trang*) ("Commerce reasonably based the all-others rate on the rate of the only remaining respondent in the review, Stapimex. Nothing in the statutory framework requires Commerce to calculate the all-others rate using multiple rates nor precludes Commerce from relying on just one rate").
[32] See *Soc Trang*, 321 F. Supp. 3d at 1347 (noting that a party's proposed "construction of the statute … would imply that Commerce could not rely on just one respondent's rate, while in fact the statute envisions cases when that may happen").
[33] *Id.*

Act.³⁴  Accordingly, we also do not agree that Commerce was required to "substantiate its departure from the expected method," given that Commerce was in the "expected method."

Notwithstanding the discussion above, Commerce understands the Court's decision to be that application of the $3.87/kg rate is "unreasonable."  The SAA states that, if the expected method "is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce <u>may</u> use other reasonable methods."³⁵  This provision suggests that the expected method is presumed to be representative and reasonable, but that this presumption can be overcome and Commerce has the discretion to deviate from the expected method using any other reasonable method.  We also note that the Act treats margins of zero percent and margins based on AFA in the same manner.  Thus, it does not express a preference for one type of reasonable rate over another in the context of deriving a separate rate; nor does it indicate that one type of rate is more representative of the experience of separate rate companies.³⁶  Commerce believes that the previously-assigned rate, which it applied under the expected method in the *Final Results* is reasonable, but clearly the Court does not.

Nonetheless, in compliance with *GODACO II*, under respectful protest, we have reevaluated the rate assigned to the separate rate companies and assigned a margin based on separate rates assigned during prior reviews in this proceeding.  In light of this Court's finding that Commerce may rely upon non-contemporaneous data as part of this reevaluation,³⁷ in order

---

³⁴ *See GODACO II* at 23.
³⁵ *See* SAA at 4201 (emphasis added).
³⁶ *See Solianus Inc., et al. v. United States*, 391 F. Supp. 3d 1331, 1336-7 (CIT 2019) (explaining "if rates determined entirely under AFA fell outside of the scope of individually investigated respondents (but zero or de minimis margins did not), Congress could have easily included that distinction in either the plain language of the statute or in the legislative history").
³⁷ *See Bosun Tools Co. Ltd., et al. v United States*, 463 F. Supp. 3d 1309, n. 17 (CIT 2020) (*Bosun Tools Co.*); *see also GODACO II* at 25 (noting that "evidence on the record suggests that {the separate rate companies'} rate may be

to identify a representative rate to be assigned to the separate rate companies, we examined the separate rates assigned in the last four administrative reviews of this order, prior to the POR:

| Review | Separate Rate |
|---|---|
| AR9 (2011-2012) | 1.20[38] |
| AR10 (2012-2013) | 0.97[39] |
| AR11 (2013-2014) | 0.69[40] |
| AR12 (2014-2015) | 0.69[41] |

Commerce selected the last four administrative reviews as all of these rates are more contemporaneous than the rate calculated in the new shipper review (covering 2010-2011) that was applied in this case to GODACO as AFA and assigned to the separate rate companies in the *Final Results*. These rates are no longer subject to judicial review. Moreover, this analysis is consistent with Commerce's consideration of the four immediately preceding separate rate margins in the remand results filed with the Court in *Bosun Tools Co*., in which the agency evaluated the historic margins of separate rate respondents as directed by the Court.[42]

The margins assigned to the mandatory respondents in these reviews – and, therefore, the rates for companies accounting for the largest volume of entries to the United States during the relevant period -- ranged widely from $0.00/kg to $2.39/kg. The separate rate during this time period also fluctuated from $1.20/kg to $0.69/kg. To account for the wide period-to-period

---

reasonably closer to the $0.69 per kilogram rate assigned to separate rate respondents in the prior twelfth administrative review….").

[38] *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Amended Final Results of Antidumping Duty Administrative Review; 2011–2012*, 79 FR 37714 (July 2, 2014).

[39] *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review; 2012–2013*, 80 FR 2394 (January 16, 2015).

[40] *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Antidumping Duty Administrative Review; 2013–2014*, 81 FR 17435 (March 29, 2016).

[41] *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Antidumping Duty Administrative Review; 2014–2015*, 82 FR 15181 (March 27, 2017).

[42] *See Final Second Remand Redetermination*, issued pursuant to *Bosun Tools Co.*, dated October 13, 2020.

variation of the dumping margins in this proceeding,[43] we have assigned an average rate, based on the simple average of the separate rates assigned in the prior four reviews, to the separate rate companies here: $0.89/kg.

## IV.     COMMENTS ON THE DRAFT RESULTS

Commerce released the Draft Results on February 8, 2021.[44]  The petitioners timely submitted comments on February 25, 2021.[45]  No other party commented on the Draft Results.

*Petitioners' Comments*

- In the First Remand Redetermination, the Court stated that Commerce appeared to depart from the expected method without explanation.  However, Commerce has clarified that it did not depart from the expected method.  Therefore, Commerce's original separate rate determination is supported by the Act, the SAA, and CAFC precedent.[46]  Accordingly, Commerce's proposed changes under protest are not necessary or in accordance with law, and they contradict the Court's remand instructions.[47]

- Section 735(c)(5)(A) of the Act states that the estimated all-others rate shall be equal to the weighted-average of individually-examined respondents' margins, excluding any margins that are zero, *de minimis*, or based entirely on facts available.  Where application of this "General Rule" of section 735(c)(5)(A) of the Act is not possible, Commerce may use any reasonable method, including averaging individually-examined respondents'

---

[43] Given the range of dumping margins calculated/assigned throughout the course of this proceeding, Commerce finds that the *Albemarle* Court's criterion for "reaching back" for prior dumping margins (*i.e.*, evidence that margins have not changed from period to period) is not met here.  Nonetheless, as noted above, we have relied on this methodology solely to comply with the Court's remand order in *GODACO II*.
[44] *See* Draft Results.
[45] *See* Petitioners' Letter, "Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:  CFA's Comments on Commerce's Draft Redetermination," dated February 25, 2021 (Petitioners' Comments).
[46] *See* Petitioners' Comments at 2 (citing section 735(c)(5)(B) of the Act, the SAA, and *Albemarle*).
[47] *Id*. at 2.

11

    margins under section 735(c)(5)(B) of the Act, which includes margins that are zero, *de minimis*, or based entirely on facts available.[48]

- In the underlying review, Commerce was unable to use section 735(c)(5)(A) of the Act to calculate the all-others rate. Accordingly, Commerce correctly followed the expected method of section 735(c)(5)(B) of the Act, which it is expected to follow unless this method is not feasible or results in a margin that is not reasonably reflective of the potential dumping margins for non-investigated companies.[49]

- Commerce incorrectly reversed its determination under protest because the Court disagreed that Commerce applied the "expected method" under the SAA; however, Commerce misunderstands the Court's holding.[50] The Court held that Commerce must have applied any reasonable method and, in doing so, failed to explain why it departed from the expected method. Commerce's Draft Results are overly focused on the Court's analysis of the implementation of the "other reasonable method" approach; rather, Commerce should focus on the Court's initial incorrect holding relating to the application of the expected method.[51]

- Commerce's clarification of its use of the expected method satisfies the Court's remand order and Commerce should not adopt an expanded interpretation of the Court's limited ruling. The remand instructions were to reevaluate the separate rate by: (1) using the expected method; (2) if not using the expected method, explain the departure from this method; and (3) if Commerce lawfully departs from the expect method, explain why the method used is reasonable. In explaining that the Act treats the expected method as "any

---

[48] *Id.* at 3 (citing sections 735(c)(5)(A) and (B) of the Act and SAA at 873).
[49] *Id.* (citing section 735(c)(5)(B) of the Act and SAA at 873).
[50] *Id.* at 4-5.
[51] *Id.*

12

reasonable method," Commerce followed the first requirement and fulfilled its obligations on remand by explaining that it did not depart from the expected method.[52]

- Commerce unnecessarily revised its separate rate calculation. Moreover, its Draft Results are not in accordance with law or the Court's remand instruction because it did not explain why it departed from the expected method by showing that the expected method was not feasible or resulted in an average that was not reasonably reflective of the potential dumping margins.[53]

- While the Court mistakenly found that Commerce departed from the expected method and did not cite record evidence supporting the representativeness of the separate rate, the rate of $3.87/kg is reasonable and reflective of the separate rate respondents during the POR.[54] While POR-specific record evidence shows that the $3.87/kg rate is reasonable as a separate rate for this review, there is no evidence that either the $0.69/kg or $0.89/kg rates are connected to POR activity by the separate rate entities.[55] The CAFC has emphasized the importance of contemporaneity.[56] The Court here directed Commerce to reevaluate the separate rate in light of record evidence as a whole and record evidence demonstrates that $3.87/kg is a reasonable and contemporaneous separate rate for this review.[57]

**Commerce's Position:** For the reasons stated below, we continue to apply the rate of $0.89/kg to the separate rate companies. At the outset, we emphasize that we agree with the petitioners

---

[52] *Id*. at 5-7.
[53] *Id*. at 6-7 (citing *Albemarle*, 821 F. 3d at 1352-1353; and *Changzhou Hawd Flooring Co. v. United States*, 848 F. 3d 1006, 1012 (Fed. Cir. 2017)).
[54] *Id*. at 7-9 (citing Petitioners' Letter, "Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Petitioners' Rebuttal Brief," dated February 16, 2018 at Exhibit 3).
[55] *Id*. at 8 (citing *Bosun Tools Co.* and *Final Second Remand Redetermination*, issued pursuant to *Bosun Tools Co.*, dated October 13, 2020).
[56] *Id*. at 8-9 (citing *Albemarle Corp. v. United States*, 821 F.3d 1345, at 1356 (Fed. Cir. 2016)).
[57] *Id.* at 9.

that Commerce did not depart from the expected method, as stated by the Court. We discussed this at length in our Draft Results. However, we disagree that our clarification regarding the application of the expected method is sufficient to satisfy the Court's remand, and that the recalculation of the separate rates in the Draft Results is in violation of the remand. In the remand order, the Court stated:

> Notwithstanding Commerce's failure to substantiate its departure from the 'expected method,' the court considers whether Commerce's use of the 'any reasonable method' approach to apply GODACO's total AFA rate to Separate Rate Plaintiffs is in accordance with the law. ... *The court concludes that Commerce's determination to apply a total AFA rate to fully cooperating Separate Rate Plaintiffs is unreasonable and unsupported by any evidence on the record.*[58]

Therefore, the Court concluded that, regardless of the provision pursuant to which Commerce applied the $3.87/kg rate, the determination to apply that particular rate was unreasonable.

Section 735(c)(5)(B) of the Act provides "any reasonable method" for calculating a separate rate, and then specifies the expected method as one such method; the Court found that the total AFA rate applied under the expected method (*i.e.*, one option under "any reasonable method") was "unreasonable and unsupported by any evidence on the record," as applied to cooperating separate rate companies.[59] Further, the Court stated that "evidence on the record suggests instead that Separate Rate Plaintiffs' rate may be reasonably closer to the $0.69 per kilogram rate assigned to the separate rate respondents in the prior twelfth administrative review."[60] Then, the Court remanded the issue to Commerce with instructions to reevaluate the rate applied to the separate rate plaintiffs in light of the evidence on the record and in accordance with the Court's opinion.[61]

---

[58] *See GODACO II* at 23-24 (emphasis added).
[59] *Id*. at 25.
[60] *Id*.
[61] *Id*.

14

Even if the Court did not recognize the $3.87/kg rate as resulting from the application of the expected method, it still found the application of this rate, a total AFA rate, invalid under section 735(c)(5)(B) of the Act which contains the provision for the expected method. Therefore, clarification of the relationship between the expected and "any reasonable" methods, alone, would not address the Court's finding that the rate is invalid under section 735(c)(5)(B) of the Act (the provision governing both the expected and "any reasonable" methods). Given this, notwithstanding Commerce's position that the Court improperly treated our decision as a departure from the expected method, we find that Commerce is precluded by the Court's finding from continuing to use the expected methodology. As a result, the Court's decision required Commerce to apply an alternate methodology, and we have done so.

The petitioners also argue that Commerce did not explain its departure from the expected method in the Draft Results or show that the expected method resulted in unreasonable dumping margins. However, as noted above, Commerce was precluded by the Court from continuing to apply the expected method; this finding by the court, itself, represents an "explanation" for our departure from the expected method. Accordingly, we disagree that Commerce's recalculation of the separate rate margin was unnecessary or unlawful, as the revised methodology used for the separate rate margin was consistent with the order of the Court.

Finally, the petitioners assert that record information supports a finding that the $3.87/kg rate is reflective of the separate rate companies' actual dumping margins during the time period under consideration. Specifically, the petitioners point to margin estimates based on the separate rate respondents' average unit values during this review in conjunction with the normal values for other exporters used in prior administrative reviews. As noted above, the Court concluded that the record supported a finding that the $3.87/kg rate was inappropriate and indicated that the

15

$0.69/kg rate from the 2014-2015 review was likely more reasonable. To address the Court's concerns, while also accounting for the over-time variation of dumping rates, we used the $0.89/kg average rate from the four most recent prior reviews.

In summary, although Commerce explained that it had applied the expected method under the "any reasonable method" provision of 735(c)(5)(B) of the Act, the Court has found the $3.87/kg rate to be unreasonable and unsupported by the record evidence as applied to the separate rate respondents. Because Commerce was required by the Court to devise a rate for the separate rate respondents during this review using a methodology other than the "expected method," Commerce determined an average of the separate rates assigned in the most recent four administrative reviews. This average rate of $0.89/kg utilizes the most contemporaneous previous reviews and reflects the range of separate rates found in those reviews.

## V.     FINAL RESULTS OF REDETERMINATION

Pursuant to the Court's order, Commerce: (1) further explained the relationship between the expected method and "any reasonable method"; (2) under respectful protest, reevaluated our assignment of GODACO's dumping margin to the separate rate companies; and (3) derived a calculation of the separate rate using previously-determined rates for separate rate companies in prior reviews. As a result, we have assigned a revised dumping margin of $0.89/kg to the separate rate respondents. The revised rate applicable to the separate rate respondents, CASEAMEX, Green Farms Seafood, Hung Vuong Group, NTSF Seafoods, South Vina, and Vinh Quang, who are parties to this remand, will be adjusted accordingly.[62]

---

[62] It is Commerce's practice to adjust the separate rate for those parties who participated in the underlying litigation. Only the separate rate companies CASEAMEX, Green Farms Seafood, Hung Vuong Group, NTSF Seafoods, South Vina, and Vinh Quang participated in the underlying litigation and requested reassignment of their separate rates. Accordingly, the redetermined separate rate, based on the average of separate rates determined in previous administrative reviews, will apply to these companies.

16

Should the Court affirm these final results of redetermination, Commerce intends to publish a notice of amended final determination and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the redetermination above.

4/5/2021

X _____

Signed by: CHRISTIAN MARSH

_____

Christian Marsh
Acting Assistant Secretary
 for Enforcement and Compliance