## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| GODACO SEAFOOD JOINT STOCK COMPANY, *et al.*, | ) ) ) |
| Plaintiff and Consolidated Plaintiffs, | ) ) ) |
| v. | ) )  Consol. Court No. 18-00063 |
| UNITED STATES, | ) )  **PUBLIC VERSION** |
| Defendant, | ) )  Business Proprietary Information |
| and | ) )  Removed from Brackets on Pages 8 )  and 9. |
| CATFISH FARMERS OF AMERICA, *et al.*, | ) ) ) |
| Defendant-Intervenors. | ) ) |

## DEFENDANT-INTERVENORS' COMMENTS IN
## OPPOSITION TO SECOND REMAND RESULTS

Defendant-Intervenors, the Catfish Farmers of America, *et al.* (together, "CFA"), hereby

submit these comments in opposition to the Final Results of Redetermination Pursuant to Court

Remand (Apr. 5, 2021) (ECF No. 95) ("*Second Remand Results*") issued by the U.S. Department

of Commerce ("Commerce") in response to this Court's ruling in *GODACO Seafood Joint Stock*

*Co. v. United States*, Court No. 18-00063, Slip Op. 21-03 (Ct. Int'l Trade Jan. 6, 2021) (ECF No.

90) ("*GODACO II*").[1]  These comments are timely filed in accordance with this Court's Feb. 11,

2021 order granting an extension of time and revising the remand schedule (ECF No. 93).

---

[1] This action arises from Commerce's determination in *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results, Final Results of No Shipments, and Partial Rescission of the Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg. 12,717 (March 23, 2018) ("*Final Results*"), P.R. 336, and accompanying Issues and Decision Memorandum, P.R. 337, and Commerce's subsequent Final Results of Redetermination Pursuant to Court Remand (Jul 21, 2020) (ECF No. 77) ("*First Remand Results*"), issued pursuant to the Court's decision in *GODACO Seafood Joint Stock Co. v. United States*, 435 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ("*GODACO I*").  Citations to documents on the confidential and public

This Court sustained, in part, and remanded, in part, certain aspects of Commerce's *First Remand Results*. *GODACO II* at 3-4. In particular, the Court remanded Commerce's assignment of a total AFA rate of $3.87/kg to the Separate Rate Plaintiffs because "Commerce did not appear to employ the 'expected method' of determining the all-others rate" and instead applied the "any reasonable method" approach without explaining the infeasibility of the "expected method" or the reasonableness of its alternative approach. *GODACO II* at 23-25. Thus, pursuant to the Court's remand instruction to reevaluate the rate assigned to Separate Rate Plaintiffs "in accordance with this opinion" Commerce was required to, sequentially, (1) use the expected method, (2) if not using the expected method, explain its departure, and (3) if lawfully departing from the expected method, explain why its alternative method is "reasonable." *See id*. Commerce's *Second Remand Results* – in which Commerce validated the feasibility and reasonableness of applying the "expected method," but then departed from it in favor of an unreasonable alternative methodology – are contrary to both the Court's instructions and the statute. 19 U.S.C. § 1673d(c)(5)(B). The Court should remand the decision to Commerce for further consideration.

### I. THE STATUTE REQUIRES COMMERCE TO FOLLOW THE "EXPECTED METHOD" UNLESS SUBSTANTIAL EVIDENCE DEMONSTRATES IT IS UNFEASIBLE OR UNREASONABLE

In administrative reviews where Commerce has limited the number of respondents individually investigated, Commerce applies 19 U.S.C. § 1673d(c)(5) to determine the rate assigned to companies that qualify for a separate rate but were not individually investigated. The "General Rule" of 19 U.S.C. § 1673d(c)(5)(A) provides that such a rate shall be an amount equal to the weighted average of the estimated dumping margins established for respondents

---

administrative records of the underlying review are in the form of "C.R.__" and "P.R.__," respectively.

individually examined, excluding any margins that are zero, *de minimis*, or determined entirely on the basis of facts available, including adverse facts available ("AFA").  19 U.S.C. § 1673d(c)(5)(A).  Where the margins for all individually examined respondents are zero, *de minimis*, or determined entirely on the basis of facts available, the "Exception" in § 1673d(c)(5)(B) instructs Commerce to use "any reasonable method" to establish the all-others rate, "including averaging the estimated weighted average dumping margins determined for the exporters and producers individually examined."  19 U.S.C. § 1673d(c)(5)(B).  The Statement of Administrative Action further clarifies that under the "Exception," the "expected method" is to weight-average all individually calculated margins, including those that are zero, *de minimis*, and determined entirely under facts available, including AFA.  Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, Vol. 1 (1994) ("SAA") at 873.  As this Court observed, Commerce may thus only depart from the "excepted method" when it "reasonably determines that the expected method is not feasible or results in an average that would not be reasonably reflective of potential dumping margins."  *GODACO II* at 21-22 (citing 19 U.S.C. § 1673d(c)(5)(B); *Navneet Publ'ns (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1358 (Ct. Int'l Trade 2014); SAA at 873; *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1351 (Fed. Cir. 2016)).

## II.   COMMERCE LAWFULLY APPLIED THE "EXPECTED METHOD" IN CALCULATING THE ORIGINAL $3.87/KG ALL-OTHERS RATE

In the underlying administrative review Commerce individually investigated only one foreign producer/exporter, GODACO Seafood Joint Stock Company ("GODACO").[2]  Because

---

[2] Commerce originally selected two mandatory respondents, GODACO and Golden Quality Seafood Corporation ("Golden Quality").  However, Golden Quality did not respond to Commerce's questionnaire and Commerce determined that it was a part of the Vietnam-wide entity, which was not under review.  *Final Results* at 12,718.

PUBLIC VERSION

Commerce assigned GODACO a margin based entirely on AFA, it could not apply the "General Rule" of 19 U.S.C. § 1673d(c)(5)(A) with respect to those companies not selected for individual examination.  Commerce instead employed the "expected method" of 19 U.S.C. § 1673d(c)(5)(B) by weight-averaging all individually calculated margins, *i.e.*, the AFA margin assigned to GODACO (*i.e.,* $3.87/kg), resulting in an all-others rate of $3.87/kg.[3]  *Second Remand Results* at 8-9.  *See generally YC Rubber Co. (N. Am) LLC v. United States*, 487 F. Supp. 3d 1367, 1376-77 (Ct. Int'l Trade 2020) ("{T}here is no requirement for multiple data points to determine an average. . . In the case of a single data point, both the simple average and the weighted average will be the same as the single data point.") (internal citations omitted); *Soc Trang Seafood Joint Stock Co. v. United States*, 321 F. Supp. 3d 1329, 1347 (Ct. Int'l Trade 2018) ("Nothing in the statutory framework requires Commerce to calculate the all-others rate using multiple rates nor precludes Commerce from relying on just one rate.").

In this instance, the "expected method" was feasible because Commerce used it to calculate the original $3.87/kg all-others rate, and there was no evidence that the rate would not be reasonably reflective of potential dumping margins.  *See Second Remand Results* at 5 (explaining that Commerce's original application of the expected method "was consistent with that Act and the SAA").  Therefore, Commerce's original separate-rate determination was in accordance with the statute's "expected" outcome.

---

[3] While Commerce may have caused confusion by alternatively referring to its methodology as the "expected method" and "any reasonable method" in the *First Remand Results*, Commerce clarified in the *Second Remand Results* that the $3.87/kg all-others rate assigned by Commerce is indeed the result of the "expected method" because, in accordance with 19 U.S.C. § 1673d(c)(5)(B) and the SAA, this figure is the weight-average of all individually calculated margins in the review, including those that are zero, *de minimis*, and determined entirely under AFA.  *Second Remand Results* at 2.

### III.   COMMERCE UNLAWFULLY DEPARTED FROM THE "EXPECTED METHOD" IN THE *SECOND REMAND RESULTS*

Despite Commerce originally having followed the expected method, and despite Commerce correctly explaining in the *Second Remand Results* that its original use of the expected method was in accordance with law, Commerce reversed itself under protest based upon its belief that the Court required it to deviate from the expected method.  *See Second Remand Results* at 9 ("Commerce believes that the previously-assigned rate, which it applied under the expected method in the *Final Results* is reasonable, but clearly the Court does not. Nonetheless, in compliance with *GODACO II*, under respectful protest, we have reevaluated the rate assigned to the separate rate companies and assigned a margin based on separate rates assigned during prior reviews in this proceeding.").  Commerce misunderstood this Court's remand instruction.

Commerce reversed its determination because "{t}he Court disagreed with Commerce's statement that it had applied the 'expected method' under the SAA" and "precluded" Commerce from continuing to apply the expected method.  *Id*. at 6 and 15, respectively.  However, this is not what the Court found.  Rather, this Court found that Commerce stated in one instance that it applied the "expected method," but then stated in another instance that it applied "any reasonable method."  *GODACO II* at 19 ("Commerce explained that it applied the 'expected method' under Section 1673d(c)(5)(B), yet the court observes that Commerce also stated that it applied 'any reasonable method' under the statutory exception").  Thus, the Court found that Commerce must have departed from the expected method and applied any reasonable method.  The Court rejected this apparent departure from the expected method because Commerce failed to explain why "the expected method was not feasible or resulted in an average that would not be reasonably reflective of the potential dumping margins. . .".  *Id.* at 22-23.  Therefore, the Court did not reject

Commerce's application of the expected method, but rather, understood that Commerce did not apply it in the first place and sought further explanation.

Only after the Court found that Commerce departed from the expected method without explanation did it analyze whether the record supported the assignment of the AFA rate under the "other reasonable method" approach. *Id*. However, Commerce's *Second Remand Results* incorrectly focus upon the Court's alternative analysis rather than its initial holding. Commerce's misinterpretation of the Court's Opinion is evident from the following passage, which Commerce cites for its view that this Court ordered it to depart from the expected method and in which Commerce emphasizes the second, contingent sentence despite only needing to explain under the first sentence that it never departed from the expected method:

> Notwithstanding Commerce's failure to substantiate its departure from the 'expected method,' the court considers whether Commerce's use of the 'any reasonable method' approach to apply GODACO's total AFA rate to Separate Rate Plaintiffs is in accordance with the law. … *The court concludes that Commerce's determination to apply a total AFA rate to fully cooperating Separate Rate Plaintiffs is unreasonable and unsupported by any evidence on the record.*

*Second Remand Results* at 14 (citing *GODACO II* at 23-24) (emphasis in Commerce original). Indeed, this Court made clear that, pursuant to the statute and SAA, whenever Commerce departs from the "expected method" it is "required first to demonstrate that the expected method was not feasible or resulted in an average that would not be reasonably reflective of potential dumping margins." *GODACO II* at 23 (emphasis added); *see also id*. at 22 (citing *Albemarle*, 821 F.3d at 1351; *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017)) (before departing from the expected method, "Commerce must determine that the expected method is not feasible or would not be reasonably reflective of the potential dumping margins for non-investigated exporters or producers based on substantial evidence") (emphasis added).

Contrary to the Court's recognition of the law, in the *Second Remand Results*, Commerce departed from the "expected method" without making either of these findings. To the contrary,

Commerce explicitly found that application of the "expected method" was both feasible and resulted in a reasonable all-others rate. *See, e.g., Second Remand Results* at 9 ("Commerce believes that the previously-assigned {$3.87/kg} rate, which it applied under the expected method in the *Final Results* is reasonable…").  Under such circumstances, Commerce's departure from the "expected method" and its adoption of an alternative method to calculate the revised $0.89/kg all-others rate was contrary to the law, the teachings of Federal Circuit in *Albemarle*, and this Court's explicit instructions.

## IV.   COMMERCE ALSO ACTED UNLAWFULLY BECAUSE THE $0.89/KG ALL-OTHERS RATE IS UNREASONABLE

Because Commerce's original determination was feasible and there was no evidence that the rate assigned would not be reasonably reflective of potential dumping margins, Commerce should not have deviated from the expected method and its further analysis regarding the reasonableness of the separate rate is not relevant.  However, because Commerce deviated from the expected method, Commerce was required to additionally explain the reasonableness of its chosen alternate "any reasonable method" approach.  *See GODACO II* at 25 (explaining that, to be in accordance with the law, "Commerce is required to support its application of the 'any reasonable method' exception in 19 U.S.C. § 1673d(c)(5)(B) by demonstrating {through record evidence} that the calculated margin is reasonable").

In the *Second Remand Results*, Commerce failed to cite any evidence demonstrating that the revised $0.89/kg all-others rate is reasonably related to the separate-rate respondents' POR-specific activities.  Indeed, no such evidence exists on the administrative record.[4]  Instead,

---

[4] This fact distinguishes this case from *Bosun*, where the Court noted that "in determining whether to apply the 'expected method,' {Commerce} should consider any margins determined by individual examination of…any of the separate rate respondents in prior administrative reviews" and where, in its *Second Remand Results*, Commerce accordingly explained why its use of the expected method "provides a contemporaneous and reasonable separate rate for the non-selected respondents." *See Bosun Tools Co., Ltd., et al. v. United States*, 463 F. Supp. 3d 1308,

Commerce relied upon previous years' dumping margins.  However, the Federal Circuit has

stressed the importance of contemporaneity in Commerce's separate rate analysis:

> In assessing the reasonableness of Commerce's methodology, our analysis is
> guided by the statute's manifest preference for contemporaneity in periodic
> administrative reviews.  Under the statute, Commerce is obligated to review an
> antidumping duty order if requested "{a}t least once during each 12-month period
> beginning on the anniversary of the date of publication" of the order.  Commerce
> must commence a review within six months of any request.  The purpose of
> periodic administrative reviews is to reassess dumping margins previously
> calculated in light of data made available during the intervening period since the
> antidumping order was issued.

*Albemarle*, 821 F.3d at 1356.  In particular, the Federal Circuit noted that where [




]. [              ].

Indeed, in *GODACO II*, the Court "direct{ed} Commerce to reevaluate the rate applied to

Separate Rate Plaintiffs in light of the evidence on the <u>record as a whole . . .</u>" *GODACO II* at 25

(emphasis supplied).

Here, the record indicates that the rate applied in the *Second Remand Results* is

unreasonable.  The record includes the separate rate respondents' [                    ].

[                                                    ] the normal

value data on the record shows [

]. *See* CFA Administrative Rebuttal Brief (Feb. 16,

2018), C.R. 248, at Exhibit 3.  Commerce's revised $0.89/kg separate rate is unreasonable

because it [                          ] and there is no record evidence linking this rate to

---

1318 (Ct. Int'l Trade 2020) ("*Bosun Tools II*") at n.17; *see also* Commerce's October 13, 2020
Final Second Remand Redetermination Pursuant to *Bosun Tools II*, Slip Op. 20-97 at 8 (*aff'd* in
*Bosun Tools Co. v. United States*, 493 F. Supp. 3d 1351, 1355-58 (Ct. Int'l Trade 2021)).  The
only separate rate respondent from this administrative review that was individually examined in
any of the four proceeding administrative reviews was Hung Vuong Group ("HVG") and record
evidence in this review demonstrates that the $3.87/kg separate rate margin is reasonable and
appropriate.

the separate rate respondents' POR-specific activity.  Meanwhile, Commerce's original $3.87/kg

rate [                                        ].  Thus, even if Commerce were required to support the

reasonableness of the rate determined using the expected method, the record demonstrates that it

is a reasonable and [                          ] separate rate.  *See id*.

## V.    CONCLUSION

For the reasons set forth above, the Court should reject Commerce's *Second Remand*

*Results* because Commerce's conclusions are not supported by the record and contradict the

statute as well as this Court's explicit remand instructions.  Accordingly, we respectfully request

that the Court further remand this issue to Commerce with instructions to redetermine its

separate rate decision in light of the record and its practice.

Respectfully submitted,

Dated: May 24, 2021                     /s/ Jonathan M. Zielinski

Jonathan M. Zielinski
James R. Cannon, Jr.
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
900 19th Street, NW, Suite 400
Washington, DC 20006
(202) 787-5507
jzielinski@cassidylevy.com

*Counsel to Catfish Farmers of America, et al.*

**Certificate of Compliance with Standard Chambers Procedure 2(B)(1)(b)**

The undersigned hereby certifies that the foregoing comments in opposition to Commerce's *Remand Results* contain 2,651 words, exclusive of any corporate disclosure statement, table of contents, table of authorities, certificates of counsel, and counsel's signature, and therefore complies with the maximum 10,000 word count limitation set forth in this Court's Standard Chambers Procedure 2(B)(1)(b).

BY:   /s/ Jonathan M. Zielinski

Jonathan M. Zielinski