UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| GODACO SEAFOOD JOINT STOCK COMPANY, <br><br> Plaintiff, <br><br> and <br><br> CAN THO IMPORT-EXPORT JOINT STOCK COMPANY, ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CATFISH FARMERS OF AMERICA, ET AL., <br><br> Defendant-Intervenors. | Consol. Court No. 18-00063 |

**DEFENDANT'S RESPONSE IN SUPPORT
OF THE SECOND REMAND RESULTS**

Defendant, the United States, respectfully submits this response to the comments of the Catfish Farmers of America, et al. (collectively, CFA), ECF Nos. 99 and 100 (CFA's Comments), concerning the United States Department of Commerce's (Commerce) final results of redetermination filed in accordance with this Court's decision and remand order in *GODACO Seafood Joint Stock Co. v United States*, 494 F. Supp. 3d. 1294 (Ct. Int'l Trade 2021) (*GODACO II*). *See* Final Results of Redetermination Pursuant to Court Remand, Apr. 5, 2021, ECF No. 95

(Second Remand P.R. 3) (second remand results).[1]  For the reasons explained below, we respectfully request that the Court sustain Commerce's second remand results and enter final judgment for the United States.

## BACKGROUND

I.  Commerce's Final Results

On March 23, 2018, Commerce published the final results of the thirteenth administrative review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam.  *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 83 Fed. Reg. 12,717 (Dep't of Commerce Mar. 23, 2018) (final results) (P.R. 336), and accompanying Issues and Decision Memorandum (IDM) (P.R. 337).

In the final results, Commerce determined that GODACO Seafood Joint Stock Company (GODACO), the sole mandatory respondent remaining under review, had failed to provide information requested of it and had not acted to the best of its ability.  *See* IDM at Cmt. 1.  Therefore, Commerce applied adverse facts available to assign a dumping margin to GODACO, in accordance with 19 U.S.C. § 1677e(a) and (b).  *Id.*  Specifically, Commerce applied the highest dumping margin calculated in the proceeding, *i.e.*, a rate of $3.87 per kilogram calculated in a prior new shipper review, to GODACO.  *Id.*  The same rate was also applied to cooperating companies who had requested a separate rate.  *Id.* at Cmt. 2.  GODACO challenged various aspects of the final results, including Commerce's application of adverse facts available to GODACO, and the selected rate.

---

[1] Public record "P.R. _" and confidential record "C.R._" refer to the administrative review record indices.

2

II.     *GODACO I* And First Remand Results

On April 1, 2020, the Court issued its first remand order.  *GODACO Seafood Joint Stock Co. v. United States*, 435 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) (*GODACO I*).  In it, the Court sustained several aspects of the final results, but remanded back to Commerce to: (1) further explain application of facts otherwise available to GODACO's complete farming factors of production; (2) further explain application of adverse facts available to GODACO; and (3) reevaluate GODACO's rate on remand.  *See id.* at 1355-60.  Moreover, the Court also held that Southern Fishery Industries Company, Ltd. (South Vina) had not failed to exhaust its administrative remedies and Commerce was required to consider its substantive arguments regarding the assignment of a separate rate.  *Id.* at 1360.

On remand, Commerce provided additional explanation regarding its application of adverse facts available to GODACO.  *See* Final Results of Redetermination Pursuant to Court Remand, July 21, 2020, ECF No. 77 (First Remand P.R. 13) (first remand results).  Commerce explained that GODACO had failed to provide accurate factors of production data in the form and manner requested, which prevented Commerce from calculating an accurate dumping margin.  First Remand Results at 5-8.  Moreover, Commerce explained that GODACO had failed to act to the best of its ability to comply with Commerce's requests for information, because it did not develop an appropriate reporting methodology despite being on notice of such requirements.  *Id.* at 8-11.  Additionally, Commerce further explained its selection of GODACO's dumping margin based on adverse facts available.  *Id.* at 44-49.

Regarding Commerce's assignment of GODACO's rate to the separate rate companies, Commerce explained that it looks to 19 U.S.C. § 1673d(c)(5) for guidance when calculating the rate for companies not selected for individual examination in an administrative review.  *Id.* at 13.

3

Specifically, when all of the dumping margins calculated for the individually examined respondents are zero, *de minimis*, or based entirely on facts available, establishment of a separate rate is governed by 19 U.S.C. § 1673d(c)(5)(B). *Id.* Section 1673d(c)(5)(B) permits the use of "any reasonable method" to establish the estimated all-others rate, including "averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated." *Id.* Commerce explained that relying on such an average is identified as the "expected method" in the Statement of Administrative Action. *Id.*; *see also Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H.R. Rep. 103-316, vol. 1 (1994) (SAA) at 873.

Commerce explained that its approach in the first remand results, with respect to the rate assigned to the separate rate companies, was consistent with section 1673d(c)(5)(B) and the SAA. First Remand Results at 20. Commerce also explained that its approach was consistent with the Court of Appeals for the Federal Circuit's opinion in *Albemarle*, to apply the expected method in assigning separate rates to non-individually examined companies. *Id.* at 16; *see also Albemarle Corp. v. United States*, 821 F. 3d 1345, 1356 (Fed. Cir. 2016).

III. *GODACO II*

In *GODACO II*, the Court sustained Commerce's application of total adverse facts available to GODACO, finding that Commerce's determination that GODACO had failed to provide necessary information was supported by substantial evidence. *GODACO II*, 494 F. Supp. 3d at 1302. Moreover, the Court held that because GODACO had failed to cooperate to the best of its ability to obtain and produce requested information, Commerce was justified in using an adverse inference under 19 U.S.C. § 1677e(b) when applying facts otherwise available. *Id.* Accordingly, the Court also upheld Commerce's application of the adverse facts available

rate of $3.87 per kilogram to GODACO as in accordance with law. *Id.* at 1303.

However, the Court remanded Commerce's determination regarding the assignment of GODACO's $3.87 per kilogram rate to the separate rate companies. *Id.* at 1306. The Court observed that Commerce "did not appear to employ the 'expected method' of determining the all-others rate in this case." *Id.* at 1305. Further, the Court stated that "notwithstanding Commerce's failure to substantiate its departure from the 'expected method,' the court considers whether Commerce's use of the 'any reasonable method' approach to apply GODACO's total {adverse facts available} rate to Separate Rate Plaintiffs is in accordance with the law." *Id.* In doing so, the Court held that Commerce's assignment of GODACO's total adverse facts available rate to fully cooperating separate rate companies was unreasonable and not in accordance with the law. *Id.* at 1306.

IV.   Second Remand Results

In the second remand results, Commerce clarified that it did apply the "expected method" in the underlying review to assign the separate rate pursuant to 19 U.S.C. § 1673d(c)(5)(B) and the SAA. Second Remand Results at 7-9. Nevertheless, Commerce, under respectful protest, complied with the Court's second remand order and assigned a revised rate to the separate rate companies in accordance with the Court's opinion. *Id.* at 7.

First, Commerce explained its respectful disagreement with the Court's observation that Commerce did not appear to employ the "expected method" in assigning GODACO's rate to the separate rate companies. *Id.* Commerce clarified that the "exception" under § 1673d(c)(5)(B) contemplates that Commerce may use "any reasonable method" to calculate a separate rate, and then it specifies one such method, the expected method. *Id.* Hence, Commerce described its methodology as both pursuant to the expected method, and a reasonable approach to a separate

5

rate assignment. *Id.* at 8.  Moreover, Commerce explained that, in light of precedent rejecting the notion that sections 1673d(c)(5)(A) and (B) require multiple rates for assigning the separate rate, Commerce had applied the expected method by relying on a single company's rate, GODACO, when assigning the separate rate pursuant to section 1673d(c)(5)(B).  *Id.*  Further, Commerce explained that it was not required to "substantiate its departure from the expected method," as Commerce had, in fact, applied the "expected method."  *Id.* at 9.

However, Commerce understood the Court to have held that application of the $3.87 per kilogram GODACO rate to cooperating separate rate companies is "unreasonable."  *Id.*  Therefore, Commerce applied the provision in the SAA stating that if the expected method "is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods."  *Id.*; *see also* SAA at 873.  In light of the Court's observation "that evidence on the record suggests instead that {separate rate companies'} rate may be reasonably closer to the $0.69 per kilogram rate assigned to separate rate respondents in the prior twelfth administrative review," Commerce relied upon non-contemporaneous data as part of this reevaluation.  *Id.* at 9-10 (citing *GODACO II*, 494 F. Supp. 3d at 1306).

In its analysis, Commerce examined the separate rates assigned in the prior four administrative reviews of this order.  *Id.* at 10.  Commerce's rationale for selecting the last four administrative reviews was that all of these rates are more contemporaneous than the rate calculated in the new shipper review (covering 2010-2011) which was applied to GODACO as total adverse facts available and previously assigned to separate rate companies in the final results.  *Id.*  Moreover, Commerce stated that its "analysis was consistent with the analysis undertaken in the remand results the Court sustained in *Bosun Tools Co.*, " in which the agency

evaluated the historic margins of separate rate respondents as directed by the Court." *Id.* (citing *Bosun Tools Co., Ltd. v. United States*, 493 F. Supp. 3d 1351 (Ct. Int'l Trade 2021)).

Commerce explained that rates assigned to mandatory respondents during the four administrative reviews preceding the underlying period of review ranged widely from $0.00 per kilogram to $2.39 per kilogram. *Id.* Commerce also explained that the margins assigned to the separate rate companies in the reviews it considered "fluctuated from $1.20 {per kilogram} to $0.69 {per kilogram}." *Id.* Therefore, to account for the variations in dumping margins, Commerce assigned an average rate, based on the simple average of the separate rates assigned in the prior four reviews, to the separate rate companies, resulting in a rate of $0.89 per kilogram. *Id.* at 11.

## ARGUMENT

I.   Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

II.        <u>Commerce's Second Remand Results Comply With The Remand Order</u>

Commerce has complied with the Court's remand instructions, which ordered it to "reevaluate the rate applied to Separate Rate Plaintiffs in light of the evidence on the record as a whole and in accordance with this opinion." *Godaco II*, 494 F. Supp. 3d at 1306. CFA argues, however, that Commerce lawfully applied the "expected method" in its original calculation of the all-others rate, and that Commerce unlawfully departed from the "expected method" in its calculation of the all-others rate in the second remand results. CFA's Comments at 3-7. Moreover, CFA argues that the calculated rate of $0.89 per kilogram is unreasonable. *Id.* at 7-9. As we explain below, CFA's arguments are without merit.

As mentioned above, in the second remand results, Commerce explained why it respectfully disagreed that it had not applied the expected method in its selection of a separate rate in the final results of the underlying administrative review. Second Remand Results at 7-8. While CFA agrees that Commerce correctly clarified its original use of the expected method, CFA argues that Commerce's departure from the expected method in the second remand results was unlawful. CFA's Comments at 4-5. CFA maintains that, on remand, all Commerce needed to do was further clarify its use of the expected method, and that Commerce should continue to assign the $3.87 per kilogram total adverse facts available rate to separate rate companies. *See id.*

However, this argument does not take into account that further clarification would not comply the Court's remand order. Second Remand Results at 13-14. CFA focuses only on the Court's *initial* observation that Commerce did not appear to employ the expected method. *See generally* CFA's Comments. CFA does not engage in any meaningful way with the Court's analysis and conclusion regarding the application of the $3.87 per kilogram total adverse facts

8

available rate to fully cooperating separate rate companies, which the Court held is unreasonable. *GODACO II*, 494 F. Supp. 3d at 1306.

In the second remand results, Commerce explained that regardless of the provision pursuant to which it applied the $3.87 per kilogram rate, it understood the Court to have held that the determination to apply that rate to separate rate companies is unreasonable. Second Remand Results at 14-15; *see GODACO II*, 494 F. Supp. 3d at 1306 ("Commerce's determination to apply a total {adverse facts available} rate to fully cooperating {separate rate companies} is unreasonable and unsupported by any evidence on the record."). The Court further observed that evidence suggests that the separate rate "may be reasonably closer to the $0.69 per kilogram rate assigned to separate rate respondents in the prior twelfth administrative review, rather than the total {adverse facts available} rate of $3.87 per kilogram from the thirteenth administrative review." *GODACO II*, 494 F. Supp. 3d at 1306. Consequently, in compliance with *GODACO II*, and under respectful protest, Commerce reevaluated the rate assigned to the separate rate companies. Second Remand Results at 9-11, 14-15.

Pursuant to § 1673d(c)(5)(B) and the SAA, Commerce used another reasonable method to calculate a representative rate to be assigned to the separate rate companies. *See id.* at 15 ("As a result, the Court's decision required Commerce to apply an alternate methodology, and {Commerce} ha{s} done so."). Commerce explained that its departure from the expected method used in the final results was based on the Court's opinion and conclusion that application of the previous total adverse facts available rate to fully cooperating separate rate companies is unreasonable. *Id.*; *see also GODACO II*, 494 F. Supp. 3d at 1306. Thus, on remand, Commerce averaged the separate rates assigned in the last four administrative reviews of the order, prior to the period of review subject to this litigation. Second Remand Results at 9-10.

Moreover, Commerce explained that it selected the four rates (from 2011 to 2015) that it averaged to calculate the separate rate in this review because those rates were more contemporaneous than the rate calculated in the new shipper review (covering 2010 to 2011) that was initially assigned to the separate rate companies in the underlying review. *Id.* at 10. Also, the rates selected "are no longer subject to judicial review," that is, there is no pending litigation contesting the separate rates. *See id.* Commerce also explained that its analysis here is consistent with its analysis in the remand results that the Court sustained in *Bosun Tools Co.*, in which the agency similarly evaluated the historic margins of separate rate respondents as directed by the Court. *Id.*

Finally, the Court should reject CFA's argument that record information supports finding the $3.87 per kilogram rate is reasonably reflective of the separate rate companies' dumping margins during the period of review. CFA's Comments at 8-9. As Commerce explained in the second remand results, CFA points to margin estimates based on the separate rate respondents' average unit values during this review in conjunction with normal values for *other* exporters used in *prior* administrative reviews. Second Remand Results at 15. CFA's makeshift approach is not a commensurate comparison which also incorporates data outside of the period of review. *See id.* Rather, to address the Court's concerns, while accounting for the over-time fluctuation of dumping rates, Commerce used the $0.89 per kilogram average rate from the four preceding reviews. *Id.* Commerce explained that this average rate utilizes the most contemporaneous prior reviews and reasonably reflects the range of separate rates used in those reviews. *Id.* at 16.

## CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's second remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:
HENDRICKS VALENZUELA
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (240) 449-5852
Email: hendricks.valenzuela@trade.gov

s/Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7571
Fax: (202) 514-8264
Email: kara.m.westercamp@usdoj.gov

June 28, 2021

Attorneys for Defendant

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| GODACO SEAFOOD JOINT STOCK COMPANY,<br><br>      Plaintiff,<br><br> and<br><br>CAN THO IMPORT-EXPORT JOINT STOCK COMPANY, ET AL.,<br><br>      Consolidated Plaintiffs,<br><br> v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br> and<br><br>CATFISH FARMERS OF AMERICA, ET AL.,<br><br>      Defendant-Intervenors. | Consol. Court No. 18-00063 |

**ORDER**

Upon consideration of the comments in opposition to Commerce's second remand redetermination, defendant's comments in support of the second remand redetermination, , and all other pertinent papers, it is hereby

  ORDERED that Commerce's second remand redetermination is sustained.

Dated: _____   _____
   New York, New York         Judge

CERTIFICATE OF COMPLIANCE

     I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,738 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

                                s/ Kara M. Westercamp
                              KARA M. WESTERCAMP
                                     Trial Attorney
                                 Department of Justice
                                      Civil Division