## UNITED STATES COURT OF INTERNATIONAL TRADE

GODACO SEAFOOD JOINT STOCK
COMPANY, ET AL.,

                Plaintiff and
                Consolidated
                Plaintiffs,

        v.

UNITED STATES,

                Defendant,

   and

CATFISH FARMERS OF AMERICA, ET AL.,

                Defendant-
                Intervenors.

**Before:** Jennifer Choe-Groves,
            Judge

Consol. Ct. No. 18-00063

## <u>PUBLIC VERSION</u>

Confidential information has been
redacted from pages 11, 12, 14.

## CONSOLIDATED PLAINTIFFS' RESPONSE TO COMMENTS OF DEFENDANT-INTERVENORS ON SECOND REMAND RESULTS

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC  20003

Counsel to Consolidated Plaintiffs NTSF Seafoods
Joint Stock Company, Vinh Quang Fisheries
Corporation, Green Farms Seafood Joint Stock
Company, Hung Vuong Corporation, and Can Tho
Import-Export Joint Stock Company

Dated: June 28, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ....................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 4

     A.  APPLYING THE TOTAL AFA RATE TO SEPARATE RATE PLAINTIFFS
         IS UNREASONABLE AND CONTRARY TO LAW .......................................... 4

     B.  APPLYING A RATE OTHER THAN THE TOTAL AFA RATE TO
         SEPARATE RATE PLAINTIFFS IS A REASONABLE METHOD FOR
         ESTIMATING SEPARATE RATE PLAINTIFFS' POTENTIAL DUMPING
         MARGINS ............................................................................................................ 7

     C.  NO RECORD EVIDENCE DEMONSTRATES THE REVISED RATE
         APPLIED TO SEPARATE RATE PLAINTIFFS IS UNREASONABLE
         ............................................................................................................................ 11

III. CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1673d(c)(5)(B)..............................................................................5–6, 9–10

19 U.S.C. § 1673d(c)(5)(A) .............................................................................8–9

**Judicial Decisions**

*GODACO Seafood Joint Stock Co. v. United States*, 45 CIT __, 494 F. Supp. 3d 1294 (2021)...3–6, 8, 10

*YC Rubber Co. (N. Am.) LLC v. United States*, 44 CIT __, 487 F. Supp. 3d 1367 (2020) .........8–9

*Soc Trang Seafood Joint Stock Co. v. United States*, 42 CIT __, 321 F. Supp. 3d 1329 (2018)...8–10

**Administrative Determinations**

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 83 Fed. Reg. 12,717 (Dep't Commerce Mar. 23, 2018) ......................................................................................1, 2, 4, 6, 7, 10

Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of the Thirteenth Antidumping Duty Administrative Review: 2015–2016," P.D. 337, (Mar. 14, 2018)..........................................................................2

**Other Authorities**

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-826, Vol. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773 ......................................5

RESPONSE TO COMMENTS IN OPPOSITION TO SECOND REMAND RESULTS
OF DEFENDANT-INTERVENORS CATFISH FARMERS OF AMERICA, ET AL.

## I.     INTRODUCTION

On behalf of Consolidated Plaintiffs NTSF Seafoods Joint Stock Company , Vinh

Quang Fisheries Joint Stock Company, Green Farms Seafood Joint Stock Company, Hung

Vuong Corporation, and Can Tho Import-Export Joint Stock Company (collectively "TPL

Consolidated Plaintiffs"), we respectfully submit this response to the comments on the U.S.

Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court

Remand, *GODACO Seafood Joint Stock Co. v. United States,* Court No. 18-00063, Slip Op. 21-03

(CIT January 6, 2021) filed by Defendant-Intervenors Catfish Farmers of America, Alabama

Catfish Inc., America's Catch, Consolidated Catfish Companies LLC, Delta Pride Catfish, Inc.,

Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc., and Simmons

Farm Raised Catfish, Inc. (collectively "CFA").  *See* Def.-Intervenors' Comments Opp'n

Remand Results (Confidential Version), ECF No. 99, May 24, 2021 ("CFA Cmts. Opp'n"); *see*

*also* Final Results of Redetermination Pursuant to Court Remand, *GODACO Seafood Joint Stock*

*Company v. United States,* Court No. 18-00063, Slip Op. 21-03 (CIT January 6, 2021), ECF

No. 95-1, Apr. 5, 2021 ("*Second Remand Results*").  The *Second Remand Results* cover an appeal of

1

Commerce's final results in the thirteenth administrative review of the antidumping duty order

on *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 83 Fed. Reg. 12,717 (Dep't

Commerce Mar. 23, 2018) (final results, final results of no shipments, and partial rescission of

antidumping duty administrative review; 2015–2016) (*"Final Results"*), and accompanying

Memorandum from James Maeder, Associate Deputy Assistant Secretary for Antidumping and

Countervailing Duty Operations, performing the non-exclusive duties and functions of Deputy

Assistant Secretary for Enforcement and Compliance, re: "Certain Frozen Fish Fillets from the

Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of the

Thirteenth Antidumping Duty Administrative Review: 2015–2016," P.D. 337, (Mar. 14, 2018)

("Final Decision Memo").

On January 6, 2021, the Court remanded Commerce's determination to assign the $3.87

per kilogram antidumping ("AD") rate ascribed to the sole mandatory respondent, GODACO

Seafood Joint Stock Company ("GODACO")—which was based on the application of adverse

facts available ("AFA")—to fully cooperating respondents that Commerce determined were

entitled to a separate rate ("Separate Rate Plaintiffs"), including TPL Consolidated Plaintiffs.

*GODACO Seafood Joint Stock Co. v. United States*, 45 CIT __, __, 494 F. Supp. 3d 1294, 1306

(2021) ("*Second Remand Order*").  Specifically, the Court found Commerce's determination of the

AD rate assigned to Separate Rate Plaintiffs "unreasonable and not in accordance with law," and

the Court directed that Commerce reevaluate the rate in light of record evidence suggesting that

Separate Rate Plaintiffs' AD margins may be closer to the $0.69 per kilogram rate assigned to

Separate Rate Plaintiffs in the twelfth administrative review.  *Id.*

     In the *Second Remand Results*, Commerce—under respectful protest—assigned a rate of

$0.89 per kilogram to the Separate Rate Plaintiffs, "based on the simple average of the separate

rates assigned in the prior four {administrative} reviews, to the separate rate companies here."

*Second Remand Results* 11.  Commerce stated that it did so to comply with the Court's order

because it understood that the Court found that applying the $3.87 per kilogram rate is

unreasonable.  *Id.* at 9.

     CFA objects to Commerce's determination of the revised rate applied to Separate Rate

Plaintiffs, after remand, because it argues that:  (1) assigning the $3.87 per kilogram total AFA

AD rate assigned to GODACO is feasible and, therefore, required by law, CFA Cmts. Opp'n

3–4; (2) the alternative separate rate calculation methodology used in the *Second Remand Results*

is contrary to law and to the Court's decision, *id.* at 5–7; and (3) the revised AD rate applied to

3

Separate Rate Plaintiffs in the *Second Remand Results* is unreasonable and not supported by

substantial evidence. *Id.* at 7–9. For the reasons discussed below, the *Second Remand Results*

comply with the Court's instructions, are in accordance with law, and are supported by

substantial evidence.

## II.   ARGUMENT

TPL Consolidated Plaintiffs concur with the comments of Defendant United States, also

filed today, responding to the objections of CFA to the *Second Remand Results*. Commerce's

*Second Remand Results* likewise comply with the Court's order to reevaluate the AD rate applied

to Separate Rate Plaintiffs in light of evidence highlighted by TPL Consolidated Plaintiffs,

which the Court found suggests that Separate Rate Plaintiffs' AD margins "may be closer to the

$0.69 per kilogram rate assigned to separate rate respondents in the prior twelfth administrative

review, rather than the total AFA rate of $3.87 per kilogram from the thirteenth administrative

review." *Second Remand Order*, 45 CIT at __, 494 F. Supp. 3d at 1306.

### A.   APPLYING THE TOTAL AFA RATE TO SEPARATE RATE PLAINTIFFS IS UNREASONABLE AND CONTRARY TO LAW

CFA claims that the $3.87 per kilogram total AFA rate assigned by Commerce in the

*Final Results* is required by statute because it resulted from applying the "expected method,"

4

which was feasible and reasonably reflective of potential dumping margins.[1]  CFA Cmts. Opp'n

3–4.  CFA's argument directly contradicts the reasoning in the *Second Remand Order*.  The Court

concluded that—by applying the single "rate determined pursuant to AFA as the all-others rate

applied to Separate Rate Plaintiffs"—Commerce "departed from the 'expected method' and

employed the 'any reasonable method approach'".  *Second Remand Order*, 45 CIT at __, 494 F.

Supp. 3d at 1305 (internal citations omitted).  The Court further concluded that Commerce had

---

[1] While neither the statute nor the regulations address a specific methodology for calculating an AD rate assigned to non-individually investigated respondents in AD administrative reviews, Commerce's practice for establishing an AD rate for non-individually examined exporters and producers is to follow the statutory methodology provided for investigations.  In investigations—where the estimated weighted average dumping margins for all respondents individually investigated in an administrative review are zero, *de minimis*, or determined entirely based on AFA—Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers individually investigated, including averaging the estimated weighted average dumping margins for exporters and producers individually investigated."  19 U.S.C. § 1673d(c)(5)(B).

The Statement of Administrative Action accompanying the Uruguay Round Agreements Act states that in such circumstances,

> the expected method . . . will be to weight-average the zero and de minimis margins and margins determined {entirely pursuant to AFA}, provided that volume data are available.  However, if this method not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.

*See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-826, Vol. I, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773, 4163.

failed to demonstrate that applying the $3.87 per kilogram total AFA rate to cooperating

Separate Rate Plaintiffs was reasonable or supported by substantial evidence, as required by the

statute. Id., 45 CIT at __, 494 F. Supp. 3d at 1305–1306 (stating that "Commerce's

determination to apply a total AFA rate to fully cooperating Separate Rate Plaintiffs is

unreasonable and unsupported by any evidence on the record.")

The Court, therefore, disagreed that the statute requires Commerce to apply the $3.87

per kilogram total AFA rate applied in the *Final Results*. Likewise, Commerce correctly

interpreted the Court's finding that the total AFA rate (i.e., $3.87 per kilogram) to Separate

Rate Plaintiffs unlawful under 19 U.S.C. § 1673d(c)(5)(B). *Second Remand Results* 15 (*citing*

*Second Remand Order*, 45 CIT at __, 494 F. Supp. 3d at 1306). To the extent the Court's

reasoning may not fully address CFA's arguments, TPL Consolidated Plaintiffs incorporate by

reference the arguments raised in their initial moving and reply briefs. *See* Mem. Support Mot.

J. Upon Agency R. Consolidated Pls. Vinh Quant Fisheries Corporation et al. 7–29, ECF No.

28-1, Sep. 19, 2018, Reply Br. Consolidated Pls. Vinh Quang Fisheries Corporation, Can Tho

Import-Export Joint Stock Company, NTSF Seafoods Joint Stock Company, Green Farms Joint

Stock Company, and Hung Vuong Corporation 3–21, ECF No. 54, June 21, 2019.

### B.   APPLYING A RATE OTHER THAN THE TOTAL AFA RATE TO SEPARATE RATE PLAINTIFFS IS A REASONABLE METHOD FOR ESTIMATING SEPARATE RATE PLAINTIFFS' POTENTIAL DUMPING MARGINS

Next, CFA argues that Commerce did not justify applying a separate rate other than the

total AFA rate applied to GODACO because Commerce did not demonstrate that applying the

"expected method" (i.e., weight-averaging the total AFA (i.e., non-calculated):  (1) was not

feasible; or (2) resulted in an AD rate that is not reasonably reflective of for Separate Rate

Plaintiffs' potential AD margins.  CFA Cmts. Opp'n 6–7.  As an initial matter, Commerce

stated that it was applying a rate other than the $3.87 per kilogram rate to Separate Rate

Plaintiffs to address the Court's concerns that the rate—as applied to Separate Rate Plaintiffs—

may be unreasonable in light of record evidence suggesting that the rate may be closer to the

$0.69 per kilogram assigned to separate rate respondents in prior reviews while accounting for

over-time variation of dumping rates.  *Second Remand Results* 16.  It follows that Commerce

implicitly found that applying the $3.89 per kilogram rate applied in the *Final Results* is not

reasonably reflective of Separate Rate Plaintiffs' potential margins.

Even if Commerce did not so state, the Court observed that the total AFA rate applied

to GODACO to Separate Rate Plaintiffs is not logically equivalent to weight-averaging the

7

zero, *de minimis* margins, and total AFA rates. *Second Remand Order*, 45 CIT at __, 494 F.

Supp. 3d at 1305 (implying that using the "one rate applied to Separate Rate Plaintiffs" is not

equivalent to "weight-averag{ing} the zero and de minimis margins and margins determined

pursuant to the facts available"). In the same passage, the Court likewise implied that applying

the single $3.87 per kilogram rate determined pursuant to AFA to Separate Rate Plaintiffs does

not result from applying the "expected method." *Id.* The Court's observations, therefore, clearly

demonstrate that it is not feasible to apply the "expected method" where Commerce applies only

one total AFA AD rate to Separate Rate Plaintiffs.

Although the Court concluded otherwise, CFA cites two cases it implies support the

notion that applying a single total AFA rate to Separate Rate Plaintiffs is required by 19 U.S.C.

§ 1677d(c)(5)(B). CFA Cmts. Opp'n 4 (*citing YC Rubber Co. (N. Am.) LLC v. United States*, 44

CIT __, __, 487 F. Supp. 3d 1367, 1376–77 (2020), *Soc Trang Seafood Joint Stock Co. v. United

States*, 42 CIT __, __, 321 F. Supp. 3d 1329, 1347 (2018)). CFA mischaracterizes the holdings

in both cases.

In *YC Rubber*, the Court considered whether the reference to "weight-averaging"

*calculated* rates in 19 U.S.C. § 1673d(c)(5)(A) requires Commerce to select more than one

mandatory respondent in an administrative review where a mandatory respondent withdraws

from participation. *YC Rubber*, 44 CIT at __, 487 F. Supp. 3d at 1375–77. The Court held that

nothing in the statute requires Commerce to maintain at least two mandatory respondents in an

administrative review. *Id.*, 44 CIT at __, 487 F. Supp. 3d at 1377, 1378. This is not the issue

before the Court in this case. In *YC Rubber*, the Court did not address the calculation of a

separate rate where, as here, the rate assigned to the sole mandatory respondent was assigned a

rate based on total AFA (i.e., a non-calculated rate) because no respondent was assigned a non-

zero, above-de minimis, or non-AFA rates, which is governed by 19 U.S.C. § 1673d(c)(5)(B)—

not § 1673d(c)(5)(A). Nor did the Court hold that applying the "expected method" is feasible or

results in a reasonable estimate of potential dumping margins where Commerce purports to

apply a single total AFA rate to Separate Rate Plaintiffs pursuant to 19 U.S.C. § 1673d(c)(5)(B).

Likewise, in *Soc Trang*, the Court's holding is limited to the notion that Commerce may

base its separate rate calculation on a single *calculated* non-zero, non-de minimis, or non-AFA

rate. *Soc Trang*, 42 CIT at __, 321 F. Supp. 3d at 1347. The Court did not hold that applying a

single total AFA rate to separate rate respondents was feasible or that such a rate would be

representative of separate rate respondents' AD margins.

In any event, the Court required Commerce to address evidence suggesting GODACO's

total AFA rate was not representative of Separate Rate Plaintiffs' AD margins in this review in

order to continue applying the $3.87 per kilogram rate to Separate Rate Plaintiffs. *Second

Remand Order*, 45 CIT at \_\_, 494 F. Supp. 3d at 1306. Commerce continues to rely solely on its

interpretation of 19 U.S.C. § 1673d(c)(5)(B) as allowing the application of GODACO's total

AFA rate to Separate Rate Plaintiffs to support the methodology applied in the *Final Results, see

Second Remand Results* 8–9, but it cites independent record evidence to suggest the $3.87 per

kilogram rate total AFA rate applied to GODACO is representative of cooperating Separate

Rate Plaintiffs' dumping margins during the period of review. Therefore, had Commerce

applied GODACO's total AFA rate to fully cooperating Separate Rate Plaintiffs—as CFA

suggests it should—that determination would continue to be unreasonable and unsupported by

substantial evidence. *See Second Remand Order*, 45 CIT at \_\_, 494 F. Supp. 3d at 1306.

Likewise, Commerce explained its departure from applying GODACO's total AFA rate

as flowing from the need to comply with its conclusion that the Court found the application of

GODACO's total AFA fate to Separate Rate Plaintiffs potentially resulted in an AD rate that

was not reflective of Separate Rate Plaintiffs' potential dumping margins during the period of

review ("POR").  *See Second Remand Results* 15 (stating that the Court required Commerce to

apply a methodology other than applying GODACO's total AFA rate because the Court found

the application of GODACO's rate invalid).  Therefore, Commerce explained its departure from

the "expected method" as being a necessary consequence of the Court's order in light of the

absence of affirmative information demonstrating that the $3.87 per kilogram rate is reflective of

Separate Rate Plaintiffs' actual dumping margins.  *See id.* (declining to consider margin estimates

based on the separate rate respondents' average unit values ("AUVs") as demonstrative of how

reflective the $3.87 per kilogram rate would be of the Separate Rate Plaintiffs' potential

dumping).

### C. <u>NO RECORD EVIDENCE DEMONSTRATES THE REVISED RATE APPLIED TO SEPARATE RATE PLAINTIFFS IS UNREASONABLE</u>

Finally, CFA argues that the $0.89 per kilogram AD rate assigned to Separate Rate

Plaintiffs is contrary to law because that rate is not reasonably reflective of Separate Rate

Plaintiffs' potential AD margins during the POR.  CFA Cmts. Opp'n 7–9.  Specifically, CFA

claims to have derived POR-specific weighted-average dumping margins for the separate rate

respondents by comparing [                                      ] to "normal value data on the record."  *Id.*

at 8 (*citing* Letter from Cassidy Levy Kent (USA) LLP, re: "Certain Frozen Fish Fillets from

11

Socialist Republic of Vietnam: Petitioners' Rebuttal Brief," C.D. 248, at Ex. 3 (Feb. 16, 2018)

("CFA Rebuttal Br.")).  CFA contends that its calculation shows that the separate rate applied

by Commerce in the *Second Remand Results* is inaccurate and not reflective of Separate Rate

Plaintiffs' potential AD margins because the rate applied to Separate Rate Plaintiffs [

].  CFA

Cmts. Opp'n 8–9.

The alleged POR-specific weighted average dumping margins derived by CFA are not a

reliable benchmark by which to assess the reliability of the $0.89 per kilogram alternative AD

rate applied to Separate Rate Plaintiffs in the *Second Remand Results*.  CFA's reference to

[                                                                                     ] stems from its comparison of

AUV data (i.e., used as a proxy for potential U.S. price) for various separate rate respondents

from this POR to transaction-specific normal values selected by CFA from well prior to the

POR.  *See* CFA Rebuttal Br. at 48 (acknowledging that the normal values used in CFA's

calculations are "from prior administrative reviews"), Ex.3 (calculating potential AD margins by

subtracting a weighted-average AUV for the 13th administrative review to an average of

transaction-specific normal values from Commerce's margin output, respectively, for:  (1) Hung

Vuong Group ("HVG") from the 9th and 10th administrative reviews (i.e., three to four years prior to the current administrative review); (2) DOCIFISH for the new shipper review covering approximately the same period); *see also Second Remand Results* 15 (in which Commerce describes CFA's argument as highlighting "margin estimates based on separate rate respondents' {AUVs} during *this* review in conjunction with the normal values for other exporters used in *prior* administrative reviews") (emphasis added).

CFA provides no explanation for why its margin calculation—which mixes selected transaction-specific normal value data from specific respondents from well prior to the POR with AUVs from the POR—should result in an accurate estimate of Separate Rate Plaintiffs' potential dumping margins during the POR.  Nor does CFA explain why the proxy normal values CFA chose from prior reviews to represent Separate Rate Plaintiffs' potential dumping during this POR reflect Separate Rate Plaintiffs' potential dumping during this POR.  Therefore, it is reasonably discernible that Commerce declined to consider this evidence as probative of the reliability of the AD rate applied to Separate Rate Plaintiffs.

In contrast, TPL Consolidated Plaintiffs highlighted record evidence from this POR that the AD rate applied to separate rate respondents in the preceding two administrative reviews

remained reflective of Separate Rate Plaintiffs' potential dumping margins in this administrative

review. *See* Letter from Trade Pacific PLLC, re: "Case Brief of NTSF Seafoods Joint Stock

Company and Vinh Quang Fisheries Corporation," CD 243, at 11, Enc. 3 (Feb. 5, 2018)

("NTSF Case Br."). Specifically, TPL Consolidated Plaintiffs the overall AUVs of the

respondents' subject imports, upon whose data the last calculated $0.69 per kilogram AD rate

was determined (i.e., Tafishco and HVG), is [          ] the overall AUV determined from

USITC Dataweb data for this 13th administrative review. *Compare* NTSF Case Br. at Enc. 1

(containing data demonstrating that the AUVs for all subject imports during the POR was $1.36

per pound) to *id.* at Enc 3 (containing a calculation of an [          ] overall AUV of [

] from Tafishco's and HVG's customs value and quantity of sales during the eleventh

administrative review, which is the last administrative review in which Commerce calculated a

separate rate based on reported data).

Thus, TPL Consolidated Plaintiffs' comparison of the overall pricing data from the 11th

administrative review to the overall pricing data in the 13th administrative review supports the

conclusion that the rate applied in the 11th administrative review continues to be reasonably

reflective of cooperating non-selected respondents' current potential dumping. *See id.* Given the

presence of reliable and contemporaneous data demonstrating that cooperating separate rate

respondents' potential dumping behavior had not changed from prior reviews, Commerce

reasonably determined that the evidence highlighted by CFA fails to demonstrate that applying

an alternative separate rate calculation methodology yields a rate that is not reflective of Separate

Rate Plaintiffs' potential AD margins during the POR.

## III.   CONCLUSION

For these reasons, the rate assigned to Separate Rate Plaintiffs in the *Second Remand Results* complies with the Court's remand instructions. CFA fails to demonstrate that AD rate assigned to Separate Rate Plaintiffs in the *Second Remand Results* is contrary to law or otherwise unsupported by substantial evidence. Therefore, TPL Plaintiffs respectfully request that the Court sustain Commerce's *Second Remand Results*.

Respectfully submitted,

 /s/  Jonathan M. Freed

Robert G. Gosselink

Jonathan M. Freed

Kenneth N. Hammer

**TRADE PACIFIC PLLC**

700 Pennsylvania Avenue, SE

Suite 500

Washington, DC  20003

(202) 223-3760

Counsel to Consolidated Plaintiffs

NTSF Seafoods Joint Stock Company, Vinh Quang

Fisheries Corporation, Green Farms Seafood Joint

Stock Company, Hung Vuong Corporation, and

Can Tho Import-Export Joint Stock Company

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GODACO SEAFOOD JOINT STOCK COMPANY, ET AL., <br><br> Plaintiff and Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CATFISH FARMERS OF AMERICA, ET AL., <br><br> Defendant-Intervenors. | **Before:** Jennifer Choe-Groves, Judge <br><br> Consol. Ct. No. 18-00063 |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Consolidated Plaintiffs' Response to Comments of Defendant-Intervenors in Opposition to Second Remand Results, dated June 28, 2021, complies with the word-count limitation described in the Standard Chambers Procedures. The memorandum of law contains 3,432 words, according to the word-count function of the word-processing software used to prepare the memorandum.

Respectfully submitted,

 /s/  Jonathan M. Freed

Jonathan M. Freed

TRADE PACIFIC PLLC

700 Pennsylvania Avenue, SE

Suite 500

Washington, DC  20003

(202) 223-3760

Counsel to Plaintiffs

NTSF Seafoods Joint Stock Company, Vinh Quang

Fisheries Corporation, Green Farms Seafood Joint

Stock Company, Hung Vuong Corporation, and

Can Tho Import-Export Joint Stock Company

**Date:**  June 28, 2021